Jonathan F. Mitchell*
Texas Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940

Talcott J. Franklin*
Texas Bar No. 24010629
Talcott Franklin P.C.
1920 McKinney Avenue, 7th Floor
Dallas, Texas 75201
(214) 642-9191

* admitted *pro hac vice*

Bradley Benbrook
California Bar No. 177786
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900

*Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Cesar Campos**; **Latana M. Chandavong**; **Neng Her**; and **Hugh X. Yang**,<br><br>        Plaintiffs,<br><br>v.<br><br>**Fresno Deputy Sheriff's Association**; **County of Fresno**; **Xavier Becerra**, in his official capacity as Attorney General of the State of California,<br><br>        Defendants. | Case No. 1:18-cv-01660-AWI-EPG<br><br><br><br>**First Amended Complaint** |

1       Plaintiffs Cesar Campos, Latana M. Chandavong, Neng Her, and Hugh X.

2   Yang bring this action to seek redress for the defendants' past and ongoing viola-

3   tions of their constitutional rights. The defendants have violated the plaintiffs' con-

4   stitutional rights by establishing an "agency shop," where employees were com-

5   pelled to pay money to the Fresno Deputy Sheriff's Association (FDSA) as a condi-

6   tion of employment. *See* Memorandum of Understanding Between the Fresno Dep-

7   uty Sheriff's Association (FDSA) Unit 1 (Law Enforcement Personnel) and County

8   of Fresno, article 17 (attached as Exhibit 1). And the defendants are continuing to

9   violate Deputy Campos's rights by deducting union dues from his paycheck—even

10  after he clearly and unequivocally communicated to both the union and his employ-

11  er that he wants to terminate his union membership and halt the payroll deductions

12  of union-related fees.

13  **JURISDICTION AND VENUE**

14      1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28

15  U.S.C. § 1343, and 28 U.S.C. § 1367.

16      2.  Venue is proper because at least one defendant resides or has its offices locat-

17  ed in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

18  **PARTIES**

19      3.  Plaintiff Cesar Campos resides in Fresno County, California.

20      4.  Plaintiff Latana M. Chandavong resides in Fresno County, California.

21      5.  Plaintiff Neng Her resides in Fresno County, California.

22      6.  Plaintiff Hugh X. Yang resides in Fresno County, California.

23      7.  Defendant Fresno Deputy Sheriff's Association ("FDSA" or "the union") is a

24  labor union whose offices are located at 1360 Van Ness Avenue, Fresno, California

25  93721.

8.   Defendant County of Fresno is a municipal corporation organized and existing under the laws of California. It may be served at the offices of its County Counsel, located at 2220 Tulare Street, Fifth Floor, Fresno, California 93721.

9.   Defendant Xavier Becerra is the Attorney General of California. His office is located at 1300 I Street, Sacramento, California 95814-2919. Attorney General Becerra is the chief law officer of the State and is charged with enforcing the State's laws—including section 1157.12(b) of the California Government Code, which the plaintiffs are challenging as unconstitutional. Attorney General Becerra is sued in his official capacity.

## CLAIM NO. 1—UNCONSTITUTIONAL AGENCY SHOP

10.   Plaintiff Cesar Campos is a Deputy Sheriff in the Fresno County Sheriff's Department.

11.   Plaintiff Latana M. Chandavong is a Deputy Sheriff in the Fresno County Sheriff's Department.

12.   Plaintiff Neng Her is a Community Service Officer in the Fresno County Sheriff's Department.

13.   Plaintiff Hugh X. Yang is a retired Bailiff Deputy Sheriff in the Fresno County Sheriff's Department.

14.   Before the Supreme Court's ruling in *Janus*, Deputy Campos, Deputy Chandavong, and Deputy Yang worked in an "agency shop," where employees were forced to either join the FDSA and pay full membership dues, or else pay "fair-share service fees" to the union as a condition of their employment. *See* Memorandum of Understanding Between the Fresno Deputy Sheriff's Association (FDSA) Unit 1 (Law Enforcement Personnel), article 17 (attached as Exhibit 1).

15.   Deputy Campos was enrolled in union membership upon accepting his job with the Fresno County Sheriff's Department, and he attempted to resign his membership soon after learning of the *Janus* ruling. *See* Exhibits 2–4.

16.  Deputy Chandavong was also enrolled in union membership upon accepting his job with the Fresno County Sheriff's Department in 2002, but withdrew from the union and became a fair-share service fee payer in 2016, following repeated prior unsuccessful attempts to leave the union. *See* Exhibits 5–8.

17.  Deputy Yang was enrolled a member of the union in March 1999, and he attempted to terminate his membership before and after the *Janus* ruling. *See* Exhibits 10–16.

18.  The compelled subsidy that Deputy Campos, Deputy Chandavong, and Deputy Yang were forced to pay to the FDSA violated their constitutional rights— regardless of whether they remained in the union and paid full membership dues (as Deputy Campos and Deputy Yang did) or resigned their membership and paid "fair-share service fees" (as Deputy Chandavong did). *See Janus v. American Federation of State, County, and Municipal Employees Council 31*, 138 S. Ct. 2448 (2018).

19.  The Supreme Court's ruling in *Janus* is fully retroactive. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96 (1993) ("[A] rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law.").

20.  The FDSA and the County of Fresno were acting under color of state law by imposing these mandatory union payments on the plaintiffs. *See, e.g.,* Cal. Gov't Code § 3502.5; *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922 (1982).

21.  The FDSA and the County of Fresno therefore violated 42 U.S.C. § 1983 by enforcing these unconstitutional agency shops, and the plaintiffs are entitled to a refund in the amount of the "fair-share service fees" or the compelled portion of union-membership dues that they were forced to pay in violation of their constitutional rights.

22.  The affirmative defense of qualified immunity is unavailable to private entities such as labor unions. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

23. The Ninth Circuit has held that the "good faith" defense is unavailable to private entities who are sued under 42 U.S.C. § 1983. *See Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983) ("[T]here is no good faith immunity under section 1983 for private parties who act under color of state law to deprive an individual of his or her constitutional rights.").

24. Even if the unions could somehow assert a defense of qualified immunity or "good faith," those defenses can provide immunity only from money damages, and they do not confer immunity when a plaintiff seeks equitable monetary relief such as backpay, restitution, or unjust enrichment, which the plaintiffs are asserting here. *See Wood v. Strickland*, 420 U.S. 308, 315 n.6 (1975), *overruled in part on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ("[I]mmunity from damages does not ordinarily bar equitable relief as well."). A defendant is never permitted to *keep* property that it took in good faith but in violation of another's rights—even when the property was taken in good-faith reliance on a statute or court order believed to be constitutional at the time. Property that is seized pursuant to a statute that is later declared unconstitutional must always be returned, even if the property was taken in good faith.

25. Taxes that are collected pursuant to a state statute that is later declared unconstitutional must be refunded to any taxpayer who sues within the relevant statute of limitations—even if the taxes were collected in good faith before the judicial pronouncement of unconstitutionality. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991); *see also United States v. Windsor*, 570 U.S. 744, 775 (2013) (compelling the IRS to return taxes that same-sex couples had paid before the Defense of Marriage Act was declared unconstitutional).

26. Property seized pursuant to a replevin statute that is later declared unconstitutional must be returned to the original owner—even if the person seizing the

1   property is allowed to assert a "good faith" defense to any collateral damage that he

2   might have inflicted during the unconstitutional seizure. *See Wyatt v. Cole*, 994 F.2d

3   1113, 1115 (5th Cir. 1993).

4   27. When fines are collected pursuant to a statute that is later declared

5   unconstitutional, the government must return those fines—even if the fines were

6   collected in good faith and in reasonable reliance on a statute that was believed to be

7   constitutional at the time. *See United States v. Lewis*, 478 F.2d 835, 846 (5th Cir.

8   1973); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976); *DeCecco v.*

9   *United States*, 485 F.2d 372, 372–73 (1st Cir. 1973); *Pasha v. United States*, 484

10   F.2d 630, 632–33 (7th Cir. 1973).

11   28. Crime victims who are awarded restitution from a convict must return that

12   money if the statute on which the conviction was based is later declared

13   unconstitutional. *See United States v. Venneri*, 782 F. Supp. 1091, 1092 (D. Md.

14   1991).

15   29. The plaintiffs' demand for a refund of this unconstitutionally collected

16   money is indistinguishable from the cases described above. The union must return

17   the unconstitutionally taken property, just as defendants must return unconstitu-

18   tionally collected taxes, unconstitutional fines, and unconstitutionally forfeited

19   property—regardless of whether they acted in good-faith reliance on statutes or

20   court decisions that purported to authorize their conduct. Neither qualified

21   immunity nor the "good faith" defense will ever allow a defendant to be enriched by

22   his inadvertent constitutional violations, and they do not provide a defense when a

23   plaintiff asserts claims for restitution of property that was seized in violation of his

24   rights.

25   30. Even if this Court were to allow the union to assert a "good faith" defense

26   to the plaintiffs' section 1983 claims, the union must *still* show that it complied with

27   pre-*Janus* case law before it can escape liability under section 1983. *See Abood v. De-*

1   *troit Board of Education*, 431 U.S. 209, 239–40 (1977). Under *Abood*, public-

2   employee unions may require non-members to pay only for union activities that are

3   non-ideological, and they were forbidden to require an employee to "contribute to

4   the support of an ideological cause he may oppose as a condition of holding a job."

5   *Abood*, 431 U.S. at 235; *see also R.J. Reynolds Tobacco Co. v. Shewry*, 423 F.3d 906,

6   916 (9th Cir. 2005). So the union must, at the very least, prove that it complied

7   with *Abood* before it can establish a "good faith" defense under section 1983.

8       31.   The County of Fresno is jointly and severally liable under 42 U.S.C. § 1983

9   for the unconstitutional payments that the plaintiffs were forced to make to the

10  union, and the defenses of qualified immunity and good faith are categorically

11  unavailable to municipal corporations. *See Owen v. City of Independence*, 445 U.S.

12  622, 655–56 (1980).

### CLAIM NO. 2—UNCONSTITUTIONAL REFUSAL TO ACCEPT RESIGNATIONS FROM UNION MEMBERSHIP

13      32.   Public employees have a right to resign their union membership at any time.

14  *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association . . .

15  plainly presupposes a freedom not to associate." (citing *Abood v. Detroit Bd. of

16  Educ.*, 431 U.S. 209, 234–35 (1977))). The FDSA has violated and continues to

17  violate the plaintiffs' constitutional rights by refusing to accept their resignations

18  from union membership.

19  **A. Cesar Campos**

20      33.   After the Supreme Court's ruling in *Janus*, Deputy Campos resigned his un-

21  ion membership and demanded that the union stop all union-related payroll deduc-

22  tions. But the union refused to honor his resignation and continues to take mem-

23  bership dues from his paycheck.

24      34.   On August 20, 2018, Deputy Campos mailed a letter to the FDSA's head-

25  quarters that announced his resignation from the union. On August 29, 2018, Eric

1    Schmidt, President of the FDSA, wrote back to Deputy Campos and explained that

2    the union would not accept his resignation. *See* Exhibit 2. Mr. Schmidt wrote:

> We received your August 20, 2018 letter requesting termination of
> your membership. The recent U.S. Supreme Court case of *Janus v.*
> *AFSCME* does not apply to members of the Union or Association,
> only the non-member fair share payors. According to our records, you
> are a full dues-paying member of the DSA. The DSA will only consid-
> er such requests that conform with the time requirements set forth in
> MOU Article 17.

3    *See* Exhibit 2.

4      35. Article 17 of the MOU is entitled "Association Security." It provides that

5    "[m]embers may withdraw only by forwarding, by registered mail, notice of revoca-

6    tion of authority to withhold dues to the Association and by filing a withdrawal card

7    at the same time according to procedures specified by this County during the full

8    calendar month immediately preceding the expiration date of this MOU, or when

9    the job classification is removed from the Unit." *See* Exhibit 1.

10      36. The current MOU expires on December 15, 2019, which means that the

11    FDSA will not allow Deputy Campos to resign from the union until November of

12    2019—and then only if he complies with certain additional "procedures specified

13    by the County." *Id*.

14      37. On September 19, 2018, after receiving the FDSA's letter denying his with-

15    drawal from the union, Deputy Campos e-mailed the County of Fresno's Payroll &

16    Human Resources Department, and cc'd FDSA President Eric Schmidt, stating:

> I am resigning my membership in the Fresno Deputy Sheriff's Associ-
> ation. I have already informed the FDSA of my decision and I have in-
> structed them to stop taking membership dues from my paycheck. I
> ask that you immediately halt the deduction of membership dues from
> my paycheck. I am revoking any authorization that I previously gave
> to payroll deductions, and I am no longer authorizing my employer to
> divert my wages to the FDSA.

*See* Exhibit 3.

38. In response to this e-mail, Mr. Schmidt promptly replied to all recipients with the message "See the attachment." The attachment was a copy of Article 17 of the MOU, which purports to prohibit withdrawal from the union except during the one-month window before the MOU's expiration date. In effect, Mr. Schmidt was instructing the Payroll & Human Resources Department to continue deductions of membership dues from Deputy Campos's paycheck despite Deputy Campos's unequivocal revocation of his authorization to do so. *See* Exhibit 4.

39. The County of Fresno and the FDSA continue to take union-membership dues from Deputy Campos's paycheck despite his resignation from the union and in defiance of his instructions to halt the payroll deduction of membership dues.

**B. Latana Chandavong**

40. The FDSA also denied Deputy Chandavong his right to resign from union membership, although it eventually allowed him to quit the union in December of 2016.

41. In January of 2014, Deputy Chandavong attempted to resign from the FDSA but was told by FDSA President Eric Schmidt that article 17 of the MOU and the FDSA's bylaws prohibited him from resigning at that time.

42. Deputy Chandavong made a second attempt to resign from the FDSA in 2015, and was again denied his constitutional right to resign on account of article 17 of the MOU.

43. Deputy Chandavong made a third attempt to resign on September 29, 2016, when he mailed a letter stating:

> I have been a member of the F.D.S.A. since I joined the Sheriff's Office. I have yet to see any benefit by being a member of the F.D.S.A. I am giving my reasonable notice to terminate my membership with the F.D.S.A. I wish to terminate my membership with the F.D.S.A. effective the first day of open enrollment 2016.

*See* Exhibit 5.

1   44. On December 18, 2016—two years after Deputy Chandavong first notified

2   the union of his desire to resign from membership—the FDSA granted his request,

3   terminated his union membership, and began taking "fair-share service fees" rather

4   than full membership dues from Deputy Chandavong's paycheck. *See* Exhibits 6–7.

5   45. The union continued to take "fair-share service fees" from Deputy Chanda-

6   vong's paychecks until July 30, 2018—more than a month after the Supreme

7   Court's ruling in *Janus*. *See* Exhibit 8.

8   **C. Hugh Yang**

9   46. The FDSA also repeatedly denied Deputy Yang his constitutional right to

10   resign from union membership, both before and after the Supreme Court's ruling in

11   *Janus*.

12   47. On November 14, 2016, Deputy Yang sent a letter to FDSA President Eric

13   Schmidt that said:

> I am respectfully requesting President Eric Schmitt to terminate my
> membership with FDSA based on the following hardship; a. Two col-
> lege tuitions[;] b. Car Loans[;] c. Six Vehicles and life insurances over
> $1500 monthly. Thank you for your time and understanding.

*See* Exhibit 10.

14   48. On November 21, 2016, Mr. Schmidt e-mailed Deputy Yang and wrote:

> Hi Hugh,
>
> The office received your letter on November 17, 2017.
>
> We can terminate your membership, but realize that you will be pay-
> ing a service fee equal to your dues. The only items you will lose are
> the following:
>
> • Building Dues: $2.31
>
> • LongTerm Disability: $9.93
>
> • Legal Defense: $14.45
>
> • Negotiations Assessment: $2.50.
>
> You[r] dues of $28.20 (minus your PORAC dues $4.16) will be con-
> verted into a service fee per the MOU. You will still be assessed a ser-
> vice fee of $24.04 pp. . . .

> I will caution you on the dropping membership will also drop your Long Term Disability insurance, which is ran through PORAC. We (FDSA) and you as a deputy are not eligible for SDI (State Disability Insurance).

*See* Exhibit 11.

49. On November 22, 2016, Deputy Yang responded to Mr. Schmidt's e-mail and wrote: "I am making a request the 'actual monetary benefits I can elect to get rid of' be taken off except the Long Term Disability. Please provide me with the new basic dues amount. Thank you for the explanation." *See* Exhibit 11.

50. The union, however, did not terminate Deputy Yang's union membership in response to his requests of November 2016, and Deputy Yang remained a union member against his wishes and against his explicit instructions to Mr. Schmidt.

51. After the Supreme Court's ruling in *Janus*, Deputy Yang again attempted to resign his union membership. On August 24, 2018, Deputy Yang mailed a letter to the FDSA that announced his resignation from the union and demanded that the union stop all union-related payroll deductions. *See* Exhibit 12. Deputy Yang wrote:

> With this letter I am resigning my membership in the union. In accordance with my rights under the Supreme Court's decision in Janus. . . . I no longer wish to pay dues or fees to the union. Therefore, I am immediately terminating my membership in the union and all of its affiliates and revoking any previous dues authorization, check off, or continuing membership form that I may have signed.

*See* Exhibit 12.

52. The FDSA refused to honor Deputy Yang's resignation and continued to take membership dues from his paycheck.

53. On August 29, 2018, FDSA Eric Schmidt mailed a letter to Deputy Yang that read as follows:

> We received your August 20, 2018 letter requesting termination of your membership. The recent U.S. Supreme Court case of *Janus v. AFSCME* does not apply to members of the Union or Association, only the non-member fair share fee payors. According to our records, you are a full dues-paying member of the DSA. The DSA will only

consider such requests that conform with the time requirements set forth in MOU Article 17.

*See* Exhibit 13.

54. Article 17 of the MOU provides that "[m]embers may withdraw only by forwarding, by registered mail, notice of revocation of authority to withhold dues to the Association and by filing a withdrawal card at the same time according to proce-dures specified by this County during the full calendar month immediately preced-ing the expiration date of this MOU, or when the job classification is removed from the Unit." *See* Exhibit 1.

55. The current MOU expires on December 15, 2019, which means that the FDSA would not allow Deputy Yang to resign from the union until November of 2019—and then only if he complies with certain additional "procedures specified by the County." *Id*.

56. On March 8, 2019, Deputy Yang e-mailed FDSA President Eric Schmidt and wrote:

> I have attempted several requests for you to terminate me from FDSA in the previous years. Today, 3/8/19, I am making another request that you terminate me from the FDSA union. In accordance with my rights under the Supreme Court's decision in Janus vs AFSCME and/or any right-to-work laws or other similar laws of my state[,] I no longer wish to pay dues or fees to the union. Therefore, I am immedi-ately terminating my membership in the union and all of its affiliates and revoking any previous dues authorization, check off, or continu-ing membership from that I may have signed. Thank you.

*See* Exhibit 15.

57. On March 12, 2019, Mr. Schmidt replied to Deputy Yang's e-mail and wrote:

> Hugh,
>
> I received your email Friday, 03/08/ 19, stating you are wanting to discontinue your FDSA membership. As I discussed with you in No-vember of 2016, your first inquiry about discontinuing your member-ship. Article 17 of the Unit 1 MOU explains how to go about doing

that. There is a window period when a member is allowed to discon-
tinue.

In January 2017, when you responded back to my November 2016
email, you asked me to remove items from your dues that were any-
thing but basic dues. I did that for you—dropping your legal defense.
Your letter August 24, 2018, as I responded and told you again there
is a procedure and window period to discontinue.

*See* Exhibit 16.

58. Deputy Yang retired from his job with Fresno County on March 29, 2019.
At the time of his retirement, the union had still not honored his repeated requests
to resign from the union, nor had they honored his requests to halt the payroll de-
duction of union-related fees.

59. The FDSA's refusal to immediately honor and implement Deputy Campos,
Deputy Chandavong and Deputy Yang's initial attempts to resign—and the union's
continued refusal to honor Deputy Campos's resignation letters—violate the
Speech Clause and the Supreme Court's ruling in *Janus*. Public employees have a
constitutional right to resign from their union at any time, and neither the union
nor the State is permitted to limit an employee's constitutional right to resign from
the union in a collective-bargaining agreement. Article 17 of the MOU is unconsti-
tutional and unenforceable. Even before *Janus*, public employees had a constitu-
tional right to quit the union and pay fair-share fees. *See Abood v. Detroit Board of
Education*, 431 U.S. 209 (1977). The union's belief that it can defy an employee's
resignation and force him to remain in union membership could not prevail even
under pre-*Janus* case law.

60. The FDSA and the County of Fresno have violated the Speech Clause and
*Janus* by continuing to garnish membership dues from Deputy Campos, Deputy
Chandavong, and Deputy Yang's paychecks after they had announced their resigna-
tions from the union. *Janus* holds that public-employee unions are forbidden to col-

1  lect money from a nonmember's wages unless the employee "clearly and affirmative-

2  ly consent[s] before any money is taken." *Janus*, 138 S. Ct. at 2486.

3      61. Deputy Campos ceased to be a member of the FDSA when the union re-

4  ceived his resignation letter of August 20, 2018. *See* Exhibit 2. Now that Deputy

5  Campos has quit the union, the union and the county are forbidden to divert any

6  union-related fees from Deputy Campos's paycheck unless they secure his clear, af-

7  firmative, and freely given consent in advance. *See Janus*, 138 S. Ct. at 2486. This

8  constitutional command trumps anything that appears in article 17 of the MOU.

9  The union must refund all money that it took from Deputy Campos after he in-

10  formed the union of his resignation on August 20, 2018, and the county is jointly

11  and severally liable for membership dues that were garnished from Deputy Campos's

12  wages after he notified the county of his resignation on September 19, 2018.

13      62. Deputy Chandavong ceased to be a member of the FDSA when he first in-

14  formed the union that he no longer wanted to be a member in January of 2014.

15  The union violated Deputy Chandavong's constitutional rights by forcing him to

16  wait until December 18, 2016, before him dropping him from the membership

17  rolls. The union must refund the difference between full membership dues and "fair-

18  share service fees" that it took from Deputy Chandavong between the time he first

19  informed the union that he no longer wanted to be a member, and the last paycheck

20  from which they collected full membership dues. The union must also refund all un-

21  ion-related fees that it took from Deputy Chandavong's paycheck after June 27,

22  2018, the day on which *Janus* was decided.

23      63. Deputy Yang ceased to be a member of the FDSA when he first informed

24  the union had he wanted to resign on November 14, 2016. See Exhibit 10. The un-

25  ion must therefore refund the difference between full membership dues and "fair-

26  share service fees" that it took from Deputy Yang between November 14, 2016, and

1  June 27, 2018, the date on which *Janus* was decided, and it must refund all union-
2  related fees that it took from Deputy Yang's paycheck after June 27, 2018.

3      64. The FDSA and the County of Fresno have committed the torts of conver-
4  sion and trespass to chattels by taking and redirecting money from Deputy Campos,
5  Deputy Chandavong, and Deputy Yang's paychecks without securing their clear,
6  affirmative, and freely given consent—and the union and the county are continuing
7  to commit those torts by taking union-membership dues from Deputy Campos
8  against his clearly expressed wishes. The union and the county are liable to refund
9  this money in an action for tort, replevin, restitution, unjust enrichment, and any
10  other state-law cause of action that offers relief for this unlawful confiscation of the
11  plaintiffs' wages.

12      65. The union's past defiance of Deputy Campos, Deputy Chandavong, and
13  Deputy Yang's resignation efforts—and its *continuing* defiance of Deputy Campos's
14  instructions to terminate his union membership—expose the union to punitive
15  damages.

### CLAIM NO. 3—UNLAWFUL CONFISCATION OF VACATION HOURS

16      66. The FDSA has not only taken money from the plaintiffs, it has also taken a
17  portion of their vacation time. Every year, the FDSA helps itself to 5.7 hours of an
18  employee's vacation time, and transfers those vacation hours to the union president,
19  Eric Schmidt, who uses those hours to conduct union-related business.

20      67. The FDSA takes these hours from an employee's vacation bank twice per
21  year. It takes 3.5 hours in March and 2.2 hours in September. The union's confisca-
22  tion of these vacation hours is reflected on an employee's pay stub, and it appears
23  under the deduction "FDSA Vacation Lv I Bank." *See* Exhibits 17–20.

24      68. In February of 2016, the FDSA started taking vacation hours from plaintiff
25  Neng Her, even though Officer Her had never been a union member. The county

1  and the union continue to divert these vacation hours, even after *Janus*, and they
2  have done so without Officer Her's permission or consent. *See* Exhibit 20 (Her pay
3  stubs).

4      69. The FDSA continues to take vacation hours from Deputy Campos, Deputy
5  Chandavong, and Deputy Yang, even though they have all announced their resigna-
6  tions from union membership. *See* Exhibit 17 (Campos pay stubs); Exhibit 18
7  (Chandavong pay stubs); Exhibit 19 (Yang pay stubs).

8      70. The FDSA even took vacation hours from Deputy Chandavong in Septem-
9  ber of 2018 and March of 2019, even though the union had acknowledged at that
10 point that Deputy Chandavong was no longer a member and could not be com-
11 pelled to pay money to the union after the Supreme Court's ruling in *Janus*. *See* Ex-
12 hibit 18 (Chandavong pay stubs); *see also* Exhibit 6 ("Latana, Your membership with
13 Fresno Deputy Sheriff's Association was terminated on 12/18/2016.").

14     71. Under *Janus*, public employers and public-sector unions are forbidden to
15 transfer vacation hours from a non-union employee to the union unless the employ-
16 ee "clearly and affirmatively consents" to donate his vacation hours before they are
17 taken from his paycheck. A forced transfer of vacation hours from a non-member to
18 a public-sector union is as unconstitutional as a forced transfer of wages.

19     72. The FDSA and the County of Fresno must restore all vacation hours that
20 they transferred from Deputy Campos and Deputy Chandavong after they first an-
21 nounced their resignations from union membership.

22     73. Because Deputy Yang has retired and can no longer use his vacation hours,
23 the FDSA and the County of Fresno must pay compensatory damages to Deputy
24 Yang for their unlawful confiscation of his vacation hours. The union and the county
25 are jointly and severally liable.

1   **CLAIM NO. 4—CHALLENGE TO CAL. GOV'T CODE § 1157.12(b)**

2   74. Deputy Campos e-mailed the County of Fresno's HR department on Sep-

3   tember 19, 2018, informing them of his resignation from the union and demanding

4   that they halt the payroll deduction of union fees. *See* Exhibit 3.

5   75. Deputy Campos's employer has taken no action in response to his e-mail of

6   September 19, 2018. The County of Fresno continues to divert Deputy Campos's

7   wages to the union in defiance of Deputy Campos's clear and unequivocal instruc-

8   tions.

9   76. The county's defiance of Deputy Campos's instructions was compelled by

10   section 1157.12(b) of the California Government Code, which requires public em-

11   ployers other than the state to "[d]irect employee requests to cancel or change de-

12   ductions for employee organizations to the employee organization, rather than to

13   the public employers." *See* Exhibit 9. Section 1157.12(b) also requires public em-

14   ployers to "rely on information provided by the [union] regarding whether deduc-

15   tions for [a union] were properly canceled or changed, and the [union] shall indem-

16   nify the public employer for any claims made by the employee for deductions made

17   in reliance on that information." *Id*. Finally, section 1157.12(b) provides that pay-

18   roll deductions "may be revoked only pursuant to the terms of the employee's writ-

19   ten authorization." *Id*.

20   77. Each of these provisions in section 1157.12(b) is unconstitutional. A public

21   employer must immediately cease union-related payroll deductions upon learning

22   that an employee has resigned from the union and withdrawn his "affirmative con-

23   sent" to those assessments—regardless of whether the employee funnels his request

24   through the union or submits his request directly to the public employer. *See Janus*,

25   138 S. Ct. at 2486. It is equally unconstitutional to limit a public employee's right

26   to terminate payments to a union that he no longer supports. *See Janus*, 138 S. Ct.

27   at 2486.

78. The Court should declare section 1157.12(b) unconstitutional and permanently enjoin the defendants from enforcing it. The FDSA and the County of Fresno must return to Deputy Campos the money that was diverted from his wages after he had informed the county's HR department that he had resigned from the union and no longer wanted his wages diverted to the FDSA.

## CLAIM NO. 5—UNCONSTITUTIONAL COLLECTION OF
## FAIR-SHARE SERVICE FEES POST-*JANUS*

79. Deputy Chandavong ceased to be a union member and became a fair-share service fee payer to the FDSA on December 18, 2016. *See* Exhibit 6.

80. The Supreme Court announced its ruling in *Janus* on June 27, 2018.

81. The FDSA, however, continued to take fair-share service fees from Deputy Chandavong's paycheck for two consecutive pay periods *after* the *Janus* ruling—the pay period of July 2, 2018 through July 15, 2018; and the pay period from July 16, 2018, through July 29, 2018. *See* Exhibit 8. The union did not cease the collection of fair-share service fees until the pay period that began on July 30, 2018—more than a month after the Supreme Court issued its ruling in *Janus*. *See* Exhibit 8.

82. The FDSA and the County of Fresno committed the torts of conversion and trespass to chattels by taking and redirecting fair-share service fees from Deputy Chandavong after *Janus*. The union and the county are liable to refund this money in an action for tort, replevin, restitution, unjust enrichment, and any other state-law cause of action that offers relief for this unlawful confiscation of Deputy Chandavong's property.

## CLAIM NO. 6—COMPELLED PURCHASE OF UNION-
## SPONSORED HEALTH INSURANCE

83. The FDSA and the County of Fresno compel Deputy Chandavong to purchase health insurance and dental insurance through the union, even though Deputy

Chandavong does not belong to the union and does not wish to purchase this insurance through the union.

84. The compelled premiums that the union forces Deputy Chandavong to pay for his health and dental insurance are exceedingly high. In his pay stub of March 22, 2019, the union took $448.00 from Deputy Chandavong's wages for these premiums, for a pay period that covered only two weeks of work. *See* Exhibit 18 ("PreTax Medical Premium"). A bi-weekly premium of $448.00 comes out to $11,648 per year.

85. Deputy Chandavong wants to purchase health and dental insurance for himself and his family through the Veterans Administration, which offers health insurance at a much lower price.

86. On November 20, 2018, Deputy Chandavong e-mailed the County of Fresno's HR Department, along with FDSA President Eric Schmidt, and wrote:

> I respectfully request to discontinue my Medical and Dental insurance with the F.D.S.A. insurance and with the Fresno County insurance. I wish to obtain my Medical and Dental insurance for myself and my family with the Veterans' Administration. Thank you for your times and considerations.

*See* Exhibit 21.

87. On November 20, 2018, an HR manager replied to Deputy Chandavong and wrote: "Unfortunately, FDSA does not allow employees to opt out of the insurance." *See* Exhibit 21.

88. Mr. Schmidt also replied to Deputy Chandavong's e-mail on November 20, 2018, and wrote:

> Lantana,
>
> In response to your email.
>
> Although you are not an FDSA member, you are tied to the MOU under Unit One. Inside that MOU is the contract for health care, which you are a recipient of. Furthermore, that health plan is not a

> Fresno County Plan, but rather one the Insurance Trust manages. Our trust is an ERISA insurance trust, which requires 100% participation from the recipients to ensure benefits are there and paid for everyone.
>
> If you are looking to save money, which you have been very clear on in the past—you may want to reach out to County HR and ask how to opt out of the Fresno County retirement system. That would save you money check to check.

*See* Exhibit 22.

89.  Article 12 of the MOU is entitled "Health Insurance," but it contains no language that requires Deputy Chandavong or any other employee to purchase their health or dental insurance through the union. *See* Exhibit 1. Nor is there any other language in the MOU that purports to compel Deputy Chandavong to purchase his health or dental insurance through the union. *See* Exhibit 1.

90. Several provisions in the MOU describe an employee's participation in the retirement plans as "mandatory." *See* Exhibit 1, articles 43–47. But nothing in the MOU describes an employee's participation in the union-sponsored health or dental insurance plans as "mandatory." *See* Exhibit 1.

91.  In all events, neither a public employer nor a public-sector union may compel a non-union member to purchase health insurance—or any other product or service—through the union, any more than they can compel the payment of membership dues or "fair-share service fees" in exchange for the union's representation. *See Janus v. American Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018). Non-members have a constitutional right to withhold all subsidies from the union and union-related activities or programs.

## CAUSES OF ACTION

92.  The plaintiffs are suing the defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the relief that they are requesting.

93. The plaintiffs are also suing the defendants under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of his personal property. The plaintiffs invoke the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

### DEMAND FOR RELIEF—CLAIM NO. 1

94. The plaintiffs respectfully request that the court:

    a.    order the FDSA to refund the compelled union payments that were taken from Deputy Campos, Deputy Chandavong, and Deputy Yang in violation of their constitutional rights, along with pre-judgment and post-judgment interest;

    b.    hold the County of Fresno jointly and severally liable;

    c.    award costs and attorneys' fees under 42 U.S.C. § 1988;

    d.    grant all other relief that the Court may deem just, proper, or equitable.

### DEMAND FOR RELIEF—CLAIM NO. 2

95. The plaintiffs respectfully request that the court:

    a.    declare that the FDSA violated Deputy Campos, Deputy Chandavong, and Deputy Yang's constitutional rights by failing to promptly accept their resignations from union membership;

    b.    declare that article 17 of the Memorandum of Understanding Between the Fresno Deputy Sheriff's Association (FDSA) Unit 1 (Law Enforcement Personnel) is unconstitutional, void, and without legal effect, and permanently enjoin the defendants from enforcing it;

    c.    declare that the plaintiffs and all public employees have a constitutional right to resign their union membership whenever they wish, and that an individual employee's constitutional right to resign from

1      the union cannot be limited by a collective-bargaining agreement

2      between a union and a public employer;

3   d. enjoin the FDSA and the County of Fresno from entering into col-

4      lective bargaining agreements in the future that purport to limit a

5      public employee's constitutional right to resign from union mem-

6      bership;

7   e. order the FDSA to refund to Deputy Chandavong the difference be-

8      tween full membership dues and "fair-share service fees" that it im-

9      properly took from Deputy Chandavong's wages between January of

10      2014 and December 18, 2016, and to refund all union-related fees

11      that it took from Deputy Chandavong's wages after June 27, 2018;

12   f. order the FDSA to refund to Deputy Yang the difference between

13      full membership dues and "fair-share service fees" that it took from

14      Deputy Yang's wages between November 14, 2016, and June 27,

15      2018, and to refund all union-related fees that it took from Deputy

16      Yang's wages after June 27, 2018;

17   g. order the FDSA to refund to Deputy Campos all union-related fees

18      that it took from his wages after August 20, 2018;

19   h. order the FDSA to pay punitive damages to the plaintiffs for refus-

20      ing to honor their constitutional right to resign from union mem-

21      bership;

22   i. permanently enjoin the FDSA, along with its officers, agents, serv-

23      ants, employees, attorneys, and any other person or entity in active

24      concert or participation with the FDSA, from taking or redirecting

25      any money from Deputy Campos or Deputy Chandavong's wages

26      unless and until they clearly and affirmatively consent in writing to

27      those payments;

1    j.    award costs and attorneys' fees under 42 U.S.C. § 1988;

2    k.    grant all other relief that the Court may deem just, proper, or equi-
3          table.

**DEMAND FOR RELIEF—CLAIM NO. 3**

5    96.  The plaintiffs respectfully request that the Court:

6    a.    order the FDSA and the County of Fresno to restore all vacation
7          hours that were taken from Deputy Campos and Deputy Chanda-
8          vong, after the dates on which they first announced their resigna-
9          tions from union membership;

10   b.    order the FDSA and the County of Fresno to restore all vacation
11         hours that were taken from Officer Her;

12   c.    order the FDSA to pay compensatory damages to Deputy Yang for
13         the vacation hours that it took from him after November 14, 2016,
14         the date on which Deputy Yang first informed the union that he
15         wanted to resign from union membership;

16   d.    hold the County of Fresno jointly and severally liable;

17   e.    permanently enjoin the FDSA and the County of Fresno from taking
18         or transferring any vacation hours from Deputy Campos, Deputy
19         Chandavong, and Officer Her, unless and until they clearly and af-
20         firmatively consent in writing to donate their vacation hours to the
21         union;

22   f.    award costs and attorneys' fees under 42 U.S.C. § 1988;

23   g.    grant all other relief that the Court may deem just, proper, or equi-
24         table.

**DEMAND FOR RELIEF—CLAIM NO. 4**

26   97.  Deputy Campos respectfully requests that the court:

a.    declare that Cal. Gov't Code § 1157.12(b) violates the constitution-
al rights of Deputy Campos and his fellow public employees, and
permanently enjoin the defendants from enforcing it;

b.    order the FDSA to refund to Deputy Campos the money that the
union took from his wages after he had informed the county's HR
department that he had resigned from the union and no longer
wanted his wages diverted to the union;

c.    hold the County of Fresno jointly and severally liable;

d.    award costs and attorneys' fees under 42 U.S.C. § 1988;

e.    grant all other relief that the Court may deem just, proper, or equi-
table.

## DEMAND FOR RELIEF—CLAIM NO. 5

98.   Deputy Chandavong respectfully requests that the court:

a.    order the FDSA to refund all "fair-share service fees" that it took
from Deputy Chandavong after the Supreme Court announced its
ruling in *Janus*;

b.    award costs and attorneys' fees under 43 U.S.C. § 1988;

c.    grant all other relief that the Court may deem just, proper, or equi-
table.

## DEMAND FOR RELIEF—CLAIM NO. 6

99.   Deputy Chandavong respectfully requests that the court:

a.    declare that Deputy Chandavong need not purchase health or dental
insurance through the union as a condition of his employment;

b.    permanently enjoin the FDSA and the County of Fresno from di-
verting Deputy Chandavong's wages to pay for health or dental in-
surance that he does not want;

c.    award costs and attorneys' fees under 43 U.S.C. § 1988;

1      d.    grant all other relief that the Court may deem just, proper, or equi-

2            table.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

Talcott J. Franklin*                    Jonathan F. Mitchell*
Texas Bar No. 24010629                  Texas Bar No. 24075463
Talcott Franklin P.C.                   Mitchell Law PLLC
1920 McKinney Avenue, 7th Floor         106 East Sixth Street, Suite 900
Dallas, Texas 75201                     Austin, Texas 78701
(214) 642-9191 (phone)                  (512) 686-3940 (phone)
(800) 727-0659 (fax)                    (512) 686-3941 (fax)
tal@talcottfranklin.com                 jonathan@mitchell.law

Bradley Benbrook
California Bar No. 177786
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900 (phone)
(916) 447-4904 (fax)
brad@benbrooklawgroup.com               * admitted *pro hac vice*

Dated: May 12, 2019                     *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 12, 2019, I served this document through CM/ECF up-on:

GARY M. MESSING
JASON H. JASMINE
MONIQUE ALONSO
Messing Adam & Jasmine LLP
980 9th Street, Suite 380
Sacramento, California 95814
(916) 446-5297
gary@majlabor.com
jason@majlabor.com
monique@majlabor.com

*Counsel for Defendant*
*Fresno Deputy Sheriff's Association*

NATASHA SAGGAR SHETH
Deputy Attorney General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004
(415) 510-3818
natasha.sheth@doj.ca.gov

*Counsel for the Defendant Xavier Becerra*

DANIEL C. CEDERBORG
County Counsel
County of Fresno
2220 Tulare Street, Room 500
Fresno, California 93721
(559) 600-3479
dcederborg@fresnocountyca.gov

*Counsel for Defendant Fresno County*


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*