1  Gary M. Messing, Bar No. 75363
       gary@majlabor.com
2  Jason H Jasmine, Bar No. 215757
       jason@majlabor.com
3  Monique Alonso, Bar No. 127078
       monique@majlabor.com
4  **MESSING ADAM & JASMINE LLP**
   980 9th Street, Suite 380
5  Sacramento, California 95814
   Telephone:    916.446.5297
6  Facsimile:    916.448.5047

7  Attorneys for Defendant
   **FRESNO DEPUTY SHERIFF'S**
8  **ASSOCIATION**

9              **IN THE UNITED STATES DISTRICT COURT**

10           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11                      **FRESNO DIVISION**

| | |
|---|---|
| 12  CESAR CAMPOS, LATANA M. CHANDAVONG, NENG HER and HUGH X. 13  YANG, | Case No. 1:18-cv-01660 AWI-EPG |
| 14              Plaintiffs, | **DEFENDANT FRESNO DEPUTY SHERIFF'S ASSOCIATION'S REPLY BRIEF IN SUPPORT OF AMENDED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, CLAIM NOS. 1, 2, 4, 5 AND 6, UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** |
| 15       v. | |
| 16  FRESNO DEPUTY SHERIFF'S ASSOCIATION, COUNTY OF FRESNO, 17  XAVIER BECERRA, in his official capacity as Attorney General of the State of California, | |
| 18              Defendants. | Date:      September 9, 2019 Time:     1:30 p.m. Place:    Courtroom 2, 8th Floor |
| 19 20 | Complaint Filed:  December 6, 2018 |

# TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................2

I.    PLAINTIFFS DO NOT ESTABLISH THAT THEY ARE ENTITLED TO
      AGENCY FEE REFUNDS THUS CANNOT STATE A CLAIM ON WHICH
      RELIEF MAY BE GRANTED, WARRANTING DISMISSAL OF CLAIM NO. 1............2

      A.    Plaintiffs Do Not and Cannot Show That *Janus* is Retroactive .................3

      B.    Plaintiffs Do Not Show That The Union Acted Under Color Of State Law.............3

      C.    Plaintiffs Cannot and Do Not Refute That the Union's Good Faith Reliance
            On Prevailing Law and Supreme Court Precedent is a Complete Defense to
            a Retroactive Refund of Fees ..........................................................................5

            1.    Restitution ............................................................................................6

            2.    Common law tort analogies...................................................................8

            3.    Plaintiffs do not have an equitable claim to repayment ...................9

      D.    Campos and Yang May Not Recover the Agency Fee Portion of Their
            Membership Dues ...............................................................................................11

      E.    California Government Code § 1159 Does Not Allow Any Plaintiff to
            Recover Past Agency Fees Nor May Plaintiffs Proceed With State Law
            Claims to Recover Past Paid Dues .................................................................11

      F.    Chandavong's Claim No. 5 for Post-*Janus* Fees is Moot and Should Be
            Dismissed ...........................................................................................................12

II.   PLAINTIFFS' VOLUNTARY ELECTION OF MEMBERSHIP BINDS THEM
      TO THEIR OBLIGATIONS UNDER THAT AGREEMENT, INCLUDING
      PAYMENT OF DUES AND WITHDRAWAL PER THE MOU .......................................14

      A.    The Member-Plaintiffs Had a Valid and Binding Membership Agreement
            with the Union Governing Conditions of Membership...............................15

      B.    Plaintiffs Are Bound By the Current MOU Regardless of When They
            Joined ...................................................................................................................16

      C.    *Janus* Does Not Apply to Full Members Such as Plaintiffs, and No "*Janus*
            Waiver" is Required Here ................................................................................19

      D.    Plaintiffs' Arguments That Campos Is Not Required to Arbitrate Fail for the
            Same Reasons Their Other Contract-Based Arguments Do .....................20

III.  PLAINTIFFS CONCEDE THAT CLAIM NO. 6 SHOULD BE DISMISSED AND
      THAT YANG AND CHANDAVONG LACK STANDING TO SEEK
      PROSPECTIVE RELIEF IN CLAIM NO. 2; ACCORDINGLY, CLAIMS 2 AND
      6 SHOULD BE DISMISSED ..........................................................................................21

IV.   CLAIM NO. 4 SHOULD BE DISMISSED BASED ON THE ARGUMENTS
      MADE BY THE ATTORNEY GENERAL.......................................................................21

1

**TABLE OF CONTENTS**
(Continued)

**Page**

CONCLUSION .................................................................................................................22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

Cases

*Babb v. California Teachers Ass'n*
    378 F.Supp.3d 857 (C.D. Cal. 2019)..................................................................... passim

*Bain v. California Teachers Ass'n*
    156 F.Supp.3d 1142 (C.D. Cal. 2015)..................................................................... 5

*Belgau v. Inslee*
    No. 185620, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018)................................. 20

*Bermudez v. SEIU, Local 521*
    No. 18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019) ................................. 11, 12

*Campbell-Ewald v. Gomez*
    136 S. Ct. 663 (2016) ............................................................................................. 13

*Carey v. Inslee*
    364 F.Supp.3d 1220 (W.D. Wash. 2019) .......................................................... 8, 9, 10

*Caviness v. Horizon Comm. Learning Ctr., Inc.*
    590 F.3d 806 (9th Cir. 2010).................................................................................. 5

*Chen v. Allstate Ins. Co.*
    819 F. 3d 1136 (9th Cir. 2016) ............................................................................. 14

*Clement v. City of Glendale*
    518 F.3d 1090 (9th Cir. 2008)............................................................................ 6, 8

*Cohen v. Cowles Media Co.*
    501 U.S. 663 (1991) ............................................................................................... 19

*Cooley v. Cal. Statewide Law Enforcement Ass'n*
    385 F.Supp. 3d 1077 (E.D. Cal. 2019)............................................................. passim

*Crockett v. NEA-Alaska*
    367 F.Supp.3d 996 (D. Alaska 2019)............................................................ 9, 10, 11

*Danielson v. Inslee*
    345 F.Supp.3d 1336 (W.D. Wash. 2018) ........................................................... 13

*Diamond v. Pennsylvania State Educ. Ass'n*
    No. 3:18-cv-128, 2019 WL 2929875 (W.D. Penn. July 8, 2019) .................................... 8, 10, 12

*Epstein v. Wash. Energy Co.*
    83 F.3d 1136 (9th Cir. 1996).................................................................................. 5

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Fire Fighters Union, Local 1186 v. City of Vallejo*
12 Cal.3d 609 (1974) ........................................................................................ 17

*Glickman v. Wileman Bros. & Elliott, Inc.*
521 U.S. 457 (1997) .......................................................................................... 9

*Great-West Life & Annuity Ins. Co. v. Knudson*
534 U.S. 204 (2002) .......................................................................................... 9

*Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*
531 F.3d 767 (9th Cir. 2008) ........................................................................... 18

*Harper v. Virginia Dep't of Taxation*
509 U.S. 86 (1993) ............................................................................................ 3

*Harris v. Quinn*
134 S.Ct. 2618 (2014) ....................................................................................... 9

*Howerton v. Gabica*
708 F. d 380 (9th Cir. 1983) ............................................................................. 6

*Janus v. AFSCME Council 31*
138 S. Ct. 2448 (2018) ...................................................................................... 2

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) ........................................................................... 1

*Lincoln Lutheran of Racine and SEIU-HCWI*
No. 30-CA-111099, 2015 WL 5047778 (NLRB Aug. 27, 2015) ..........................18

*Lugar v. Edmonson Oil Co.*
457 U.S. 922 (1982) .......................................................................................... 5

*Montanile v. Bd. of Trs. of Nat'l. Elevator Indus. Health Benefit Plan*
136 S.Ct. 651 (2016) ..................................................................................... 9, 10

*Mooney v. Illinois Education Ass'n*
372 F.Supp.3d 690 (C.D. Ill. 2019) ............................................................. 9, 10

*Neely v. United States*
546 F.2d 1059 (3rd Cir. 1976) .......................................................................... 7

*NLRB v. Katz*
369 U.S. 736 (1962) ........................................................................................ 18

*Sacramento County Retired Employees Ass'n v. County of Sacramento*
975 F.Supp.2d 1150 (E.D. Cal. 2013) ............................................................. 18

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Smith v. Greystone Alliance, LLC*
    772 F.3d 448 (7th Cir. 2014) .................................................................................. 13

*Smith v. Superior Court*
    No. 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ........................ 20

*United States v. Rayburn House Office Building Room 2113 Washington DC 20515*
    497 F.3d 654 (D.C. Cir. 2007) .................................................................................. 7

*United States v. Windsor*
    570 U.S. 744 (2013) .................................................................................................. 7

*Wyatt v. Cole*
    504 U.S. 158 (1992) .................................................................................................. 8

*Wyatt v. Cole*
    994 F.2d 1113 .......................................................................................................... 7

*Yohn v.California Teachers Ass'n*
    No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28, 2018) ................... 12, 13

Statutes

42 U.S.C. §1983 .......................................................................................................... 1, 2, 3, 4

California Government Code § 1159 ............................................................................ 11, 12

California Government Code § 3500 ............................................................................ 17

1       In its opening brief ("MPA" [ECF 44-1]), Defendant Fresno Deputy Sheriff's Association

2  ("FDSA" or the "Union") pointed out that Plaintiffs base their action entirely on the theory that

3  the Union violated Plaintiffs' constitutional rights under 42 U.S.C. §1983. MPA at 6-7. Plaintiffs

4  do not dispute that their case depends on a finding that the Union is liable under §1983. The Union

5  demonstrated that under the Supreme Court's two-prong test for establishing whether a private

6  party has acted under color of state law so as to confer liability for constitutional violations, both

7  the law and facts establish that there is no state action here. MPA at 8-17. Plaintiffs' single

8  argument in response – that the State "participated in" the MOU (Opp. at 5) -- is inadequate to

9  meet Plaintiffs' burden to show state action. The Union also demonstrated that Plaintiffs cannot

10  recover under §1983 because the Union received agency fees in compliance with California statutes

11  and United States Supreme Court precedent that authorized fair-share fees. The bulk of Plaintiffs'

12  brief attacks this good faith defense to no avail given the weight of unanimous opinion that it applies

13  to these post-*Janus* cases..

14      Under guise of "clarif[ying] the evidence" (Response to the Union Defendant's Motion to

15  Dismiss ("Opp.") [ECF 45] at 4), Plaintiffs purport to explain how there is no valid contract

16  between Plaintiffs and the Union. The case law is clear, however, that the membership card, MOU

17  and By-Laws comprise a valid and enforceable contract binding Plaintiffs to certain obligations

18  voluntarily undertaken. Plaintiffs appear to now take the position that while they may have entered

19  into a contract for the payment of dues via signing the membership card (although, they argue,

20  only for the duration of the MOU then in place), that agreement did not bind them to

21  membership.[1] The plain text of the card – on which Plaintiffs voluntarily elected membership --

22

23  ---

[1] Plaintiffs suggest that this Court convert the instant motion to a motion for summary judgment
24  because the FDSA attaches the membership cards of Campos and Yang to their opening brief.
Opp. at 1. The FDSA urges to Court to treat this motion as filed, a motion to dismiss, in light of
25  the fact that the underlying complaint is premised on Plaintiffs' contention that the terms of their
agreement with the Union on becoming enrolled as members are unconstitutional and invalid. The
26  cards are therefore incorporated by reference. MPA at 3, n.4. The fact that plaintiffs "do not
dispute the authenticity of the membership applications signed by Mr. Yang and Mr. Campos"
27  (Opp. at 1) only underscores that the cards may appropriately be considered in the motion's
28  current posture. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the

itself refutes that argument, as does the MOU which sets forth protocol for withdrawal from the Union. *See* Declaration of Eric Schmidt In Support of Motion to Dismiss ("Schmidt Dec.") [ECF 40-3, 40-4], Exs. A, B. Plaintiffs cannot skirt this obligation with the new argument that only the MOU in force when they joined applies. Again the law and the facts preclude avoiding their contractual commitment.

Numerous cases have been decided on these very issues in the time since Plaintiffs filed their lawsuit and the FDSA filed its Motion to Dismiss, many of them filed by Plaintiffs' counsel with substantially similar arguments. As explained in Plaintiffs' opening brief and here, those cases, and the facts of this case as alleged in the complaint, compel the dismissal of the claims at issue.

**ARGUMENT**

**I.    PLAINTIFFS DO NOT ESTABLISH THAT THEY ARE ENTITLED TO AGENCY FEE REFUNDS THUS CANNOT STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED, WARRANTING DISMISSAL OF CLAIM NO. 1**

Plaintiffs argue that they are entitled to a refund of agency fees already paid, either as agency fees (Chandavong) or based on a formula that would refund the difference between membership fees paid and what would have been paid as agency fees (Yang and Campos), on two grounds:  (1) that the U.S. Supreme Court's opinion in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018) ("*Janus*") is retroactive, and (2) that the Union acted under color of state law in collecting the fees. Opp. at 7. As shown in the FDSA's opening brief, both theories are wrong as a matter of law and fact and Plaintiffs' Response does not contradict that fact.

In its opening brief, the FDSA showed that it is not liable for agency fee refunds because there it did not act under color of law, exposing it to liability under § 1983, and that even if there were state action, at the time the fees were collected, the FDSA acted in good faith under the prevailing law of the land. MPA at Sections I and III. This good faith defense applies even if *Janus* is deemed retroactive -- *which no case has thus far found* -- and where the text of the case

---

"incorporation by reference" doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

1   itself does not admit of such an interpretation. Plaintiffs fail to refute either ground, ignoring

2   controlling authority in favor of conclusory argument, and relying on theories that have been

3   repeatedly rejected by the courts considering them in the wake of *Janus*.

4         **A.      Plaintiffs Do Not and Cannot Show That *Janus* is Retroactive**

5         As to retroactivity, Plaintiffs' entire argument comprises its stated conclusion that "*Janus*

6   is retroactive," plus a single citation to *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96

7   (1993).[2] Opp. at 7. Plaintiffs' reticence is understandable:  it is now settled law that – as every

8   court to have considered the issue since *Janus* has held – even if *Janus* applies retroactively, the

9   good faith defense bars a plaintiff's claim for monetary relief. *See* MPA at 21 and n.14. Plaintiffs

10   do not address or attempt to distinguish a single one of these myriad cases. Plaintiffs' confidence

11   that *Janus* is retroactive is belied by the holdings of the many courts who have considered the

12   issue. MPA at 22. *See, e.g*., *Cooley v. Cal. Statewide Law Enforcement Ass'n,* 385 F.Supp.3d

13   1077, 1081 (E.D. Cal. 2019) *appeal docketed*, No. 19-16498 (9th Cir. July 31, 2019) ("declin[ing]

14   to forge new ground and create [retrospective] liability here" where the *Janus* court "itself did not

15   specify whether the plaintiff was entitled to retrospective relief for conduct the Supreme Court had

16   authorized for the previous forty years").

17         **B.      Plaintiffs Do Not Show That The Union Acted Under Color Of State Law**

18         The FDSA demonstrated that Plaintiffs' §1983 claims – essentially the entirety of their

19   complaint (MPA at 6-7) -- should be dismissed because Plaintiffs cannot establish that the Union

20   acted under color of state law. MPA at 7-17. Plaintiffs' sole argument in response boils down to

21   the vague conclusion that the County "participat[ed] in the MOU" and therefore state action

22   should be found. Opp. at 5. This naked assertion does not come close to the showing that Plaintiffs

23   must make in order to hold a private party liable for alleged constitutional violations, and

24   Plaintiffs make no attempt to counter – or demonstrate – any aspect of the requisite two-prong test

25   established by the Supreme Court for determining when an alleged deprivation of a constitutional

26   right is "fairly attributable to the State." *See* MPA at 10. This absence of any effort to address the

27   _____

28   [2] Plaintiffs make no effort to address the FDSA's distinction of *Harper*. *See* MPA at 22.

controlling law is reason enough to dismiss the § 1983 claims.[3] In resolving this question one need

look no further than the court's holding in *Cooley* (a case directly on point yet completely ignored

by Plaintiffs), on similar facts: "[T]he Union's refusal to immediately accept Mr. Cooley's

resignation and cease fee deductions *does not constitute state action*." 385 F.Supp.3d at 1081

(emphasis added).

Plaintiffs seek to make Plaintiffs' membership a matter of compulsion by the Union, but

the evidence is to the contrary. As the FDSA argued and the membership cards make clear, on

becoming deputy sheriffs, Plaintiffs all affirmatively consented to union membership. *See* Schmidt

Dec., Exs. A, B [Campos and Yang signed membership cards, checking "I choose to become a

member"]; *see also* FAC [ECF 24], ¶¶ 15 -17. Each card provides that each new employee signify

whether he chooses to "become a member *or* pay a service fee *or* opt not to become a member or

pay a service fee at the time of hire." Schmidt Dec., Exs. A, B (emphasis added). Of those three

distinct options, each of Plaintiffs made an affirmative decision to become a member, which

carried with it contractual obligations. Plaintiffs' constitutional challenges under Claim Nos. 1 and

2 fail as a matter of law because their claimed injuries arise not from any *state* action by the

Union, but from their voluntary decision to join the Union and abide by the terms of their Union

membership agreement which the FDSA then enforced.[4]

After this desultory attempt, Plaintiffs then shift to their allegations in an effort to show

that the claim was properly pled. Opp. at 5 ("Chandavong has alleged that the diversion of his

wages occurred 'under color of state law'"). However, "conclusory allegations of law and

unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

---

[3] The FDSA further joins and incorporates by reference the arguments of Attorney General Becerra's Reply Brief on its Motion to Dismiss the First Amended Complaint with respect to the lack of state action here. ECF 47 at 3.

[4] The complaint frames the Union's action as unconstitutional because of (1) its failure to accept the resignation of Plaintiffs and (2) it continued to collect membership dues. In either case, Plaintiffs can demonstrate no state action by the Union.

*Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted).[5] Moreover, as noted above, consent is not the issue here, nor has Chandavong pled that he did not "consent" to paying agency fees. The issue raised by Plaintiffs is whether the Union unconstitutionally compelled collection of agency fees from Chandavong, which requires a showing that the FDSA acted under color of state law. Plaintiffs make no such showing, nor can they, and the bald statement that the payment was compelled by a contract between the Union (on behalf of its members) with the state is insufficient to carry Plaintiffs' burden. For the actions of a private party like the Union to satisfy this essential requirement, the "plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."' *Caviness v. Horizon Comm. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)); *Bain v. California Teachers Ass'n*, 156 F.Supp.3d 1142, 1149 (C.D. Cal. 2015). Plaintiffs can make no such showing.

Similarly, as to Yang and Campos, Plaintiffs offer only the conclusion that the "forced diversion of membership dues and fair share fees [not applicable to Yang and Campos] is fully attributable to the union and the County's Memorandum of Understanding." Opp. at 6. For the reasons stated above and in the FDSA's opening brief, this conclusory statement is insufficient to demonstrate state action by the Union in enforcing its membership agreement.

### C.   Plaintiffs Cannot and Do Not Refute That the Union's Good Faith Reliance On Prevailing Law and Supreme Court Precedent is a Complete Defense to a Retroactive Refund of Fees

Plaintiffs do not dispute that fair-share fees were lawful under California statutes and controlling Supreme Court precedent prior to *Janus*. Nor do they dispute that every court of appeal to consider the issue has concluded that private parties who rely on presumptively valid state laws have a good faith defense to retrospective §1983 liability; moreover, they concede  that the Ninth

---

[5] Plaintiffs also state that the FDSA "has failed to produce any document that Chandavong consented to the payment of fair-share service fees." Opp. at 5. But Plaintiffs' own complaint admits that Chandavong "*enrolled in union membership* on accepting his job with the Fresno County Sheriff's Department in 2002, but withdrew and became a fair share service fee payer in 2016…." FAC, ¶16 (ECF 24) at 4 (emphasis added).

Circuit has recognized the good faith defense in *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008). Opp. at 7.[6] Plaintiffs pointedly do not dispute that "every district court to consider whether unions that collected agency fees prior to *Janus* have a good faith defense to §1983 liability has answered in the affirmative." *Babb v. California Teachers Ass'n,* 378 F.Supp.3d 857, 872 (C.D. Cal. 2019) (dismissing plaintiffs' claim to retroactive monetary relief as a matter of law), citing collected cases. MPA at 21 and n.14. Plaintiffs nevertheless contend that the Union cannot invoke the defense here. Opp. at 6-18. As numerous cases have held, Plaintiffs are mistaken and their position has been soundly rejected by all courts considering the question in these cases to date.

In *Babb*, the court conducted a thorough examination of the exact arguments put forth here by Plaintiffs, and its holdings are directly on point and fully consistent with rulings in other contemporaneous post-*Janus* cases.[7] 378 F. upp.3d at 872-876. At the conclusion of its review, the *Babb* court rejected all of Plaintiffs' arguments against application of the good faith defense and dismissed the plaintiffs' §1983 claims with prejudice, stating: "The Court agrees with every other district court to have decided this question and concludes that the good faith defense should apply here as a matter of law." *Id*. at 876 (citation omitted). The Court should follow suit here.

### 1.  Restitution

Plaintiffs devote the vast majority of their argument against application of the good faith defense to a prolonged discussion of cases dealing with the unconstitutional taking of property. Opp. at 8-15. Plaintiffs argue that in cases where a court "repudiates a previous judicial ruling that

---

[6] The Ninth Circuit's recognition of a good faith defense in §1983 claims in *Clement* therefore supersedes *Howerton v. Gabica*, 708 F.2d 380 (9th Cir. 1983), cited by Plaintiffs at 7 as an example of an appellate court that has rejected the defense. Moreover, *Howerton* is in any event distinguishable from the case at bar in that the defendants there were found to have acted under color of state law, *id*. at 385 n.10, which the FDSA has shown is not the case here.

[7] The plaintiffs in *Babb* and the consolidated cases were also represented by Plaintiffs' counsel here and many of the arguments made are verbatim to those made here, as seen from the *Babb* court's quotation of statements made in Plaintiffs' brief in that case. Compare, *e.g., Babb*, 378 F.Supp.3d at 875 (citing the plaintiff's brief for "*whenever* property is unconstitutionally taken…it must be returned;" emphasis in original) to Opp. at 8 ("Property that is taken in violation of another's constitutional rights must *always* be returned;" emphasis in original).

1   had authorized unconstitutional conduct – the court decision is retroactive, and money or property

2   that was taken in reliance on the unconstitutional statute *must* be restored to the rightful owner."

3   Opp. at 8 (emphasis in original).[8] Addressing the identical argument in *Babb*, the court rejected

4   Plaintiffs' theory in all respects. *See Babb*, 378 F.Supp.3d at 875-876.

5       As a threshold matter, and as the *Babb* court concluded, case law provides Plaintiffs no

6   comfort. Analyzing the cases presented by the plaintiffs in *Babb*, the court concluded that most

7   involved "the return of discrete and identifiable property, not a refund of fees paid," *Babb*, 378

8   F.Supp.3d at 876, disposing of *United States v. Rayburn House Office Building Room 2113*

9   *Washington DC 20515*, 497 F.3d 654, 656, 665 (D.C. Cir. 2007) (documents) (Opp. at 10-11),

10  *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993) (cattle) (Opp. at 10), *Clement*, 518 F.3d at

11  1099 (tow truck) (Opp. at 11). *Babb*, 378 F.Supp.3d at 876. For the same reasons, these cases do

12  not support Plaintiffs' position here.

13      Moreover, as the *Babb* court aptly observed, "[f]or the most part, the cases Plaintiffs cite

14  have nothing to say about a good faith defense to a §1983 claim," *Babb*, 378 F.Supp.3d at 875-76,

15  and thus do not stand for the sweeping proposition Plaintiffs advance here – that where monies are

16  taken in good faith reliance on law, the monies "*must* be restored to the rightful owner." Opp. at 8

17  (emphasis in original).[9]  Plaintiffs ignore the fact that the fees collected were (1) voluntarily

18  agreed to and (2) used to fund collective bargaining efforts that benefited the Agency-Fee Payer

19  Plaintiff, as well as all members. On its face, therefore, there was no wrongful "enrichment"

20  requiring disgorgement (*See* Opp. at 8), as perhaps might be the case in the cases involve return of

21  fines paid. *See* n. 9, *supra*.

22

23

[8] Plaintiffs' bold statement stumbles immediately —*Janus* is not retroactive, although the Union

24  assumes, *arguendo*, that it is in invoking the good faith defense. Assuming it is not retroactive,
    however, Plaintiffs' arguments against application of the good faith defense are moot.

25  [9] *United States v. Windsor*, 570 U.S. 744 (2013) and *Neely v. United States*, 546 F.2d 1059 (3rd

26  Cir. 1976), cited by Plaintiffs at 9, do not discuss good faith or immunity and further concerned
    the return of fines, and in discussing *Windsor*, Plaintiffs merely theorize what might have

27  happened. The other string cites provided by Plaintiffs at Opp. 9-10 (¶ 2) also all concern fines,
    which are demonstrably different from voluntarily paid fees used to the benefit of the payor, not

28  the Union itself. *See also* Opp. at 11, ¶5 (theorizing about defenses in excessive fines case)

### 2.   Common law tort analogies

Plaintiffs argue that the Court must "look to the most analogous common-law tort" and allow a good faith defense only if "that tort would have conferred similar immunities when section 1983 was enacted." Opp. at 15-16, citing *Wyatt v. Cole*, 504 U.S. 158 (1992). Addressing the identical argument in *Babb*, the court observed that "the portion of *Wyatt* from which Plaintiffs derive their 'rule' dealt with immunity from §1983 liability, not the good faith defense." The *Babb* court further concluded that "Plaintiffs' construction of the good faith defense lacks precedence in the Ninth Circuit," citing *Danielson v. Inslee*, 340 F.Supp.3d 1083, 1086 (W.D. Wash. 2019), *appeal docketed*, No. 18-36087 (9th Cir. Dec. 28, 2018), and noting that *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008), which recognized the good faith defense, "gives no indication that courts must analyze a common law analogue to apply the good faith defense." 378 F. Supp. 3d at 873. *See also Diamond v. Pennsylvania State Educ. Ass'n,* No. 3:18-cv-128, 2019 WL 2929875 (W.D. Penn. July 8, 2019) ("agree[ing] with the opinions of various district courts that have determined – when presented with indistinguishable facts – that the applicability of the good-faith defense does not require analyzing the most analogous common-law tort" and collecting cases).

Plaintiffs argue that for their First Amendment §1983 claim, conversion is "the most analogous to the union's unconstitutional confiscation of wages." Opp. at 16. But *Babb* rejected this same argument, holding that:

> even assuming "the 'common law analogue' requirement from *Wyatt* does apply, conversion is not the most closely analogous common law claim." *Danielson*, 340 F.Supp.3d at 1086. Indeed, conversion "does not account for the fact that Plaintiffs' constitutional claim is rooted in the First Amendment." *Carey*, 364 F.Supp.3d at 1230. "Conversion involves taking another's property, regardless of intent, whereas the gravamen of the First Amendment claim in this case is that the Union Defendant[s] expended compelled agency fees on political and ideological activities that Plaintiffs oppose." *Danielson*, 340 F.Supp.3d at 1086. In other words, Plaintiffs' First Amendment claim turns not upon the Union Defendants' receipt of Plaintiffs' property, but upon the dignitary harm resulting from being compelled to support speech with which they disagree. *See id*. Thus, the Court agrees with the other courts that have held that Plaintiffs' claims are most similar to dignitary torts, such as defamation, or to abuse of process because the Union Defendants used government processes to collect agency fees. *Id*.;

1    *Carey*, 364 F.Supp.3d at 1230; *Cook*, 364 F.Supp.3d at 1191;
     *Crockett*, 367 F.Supp.3d at 1005–06, 2019 WL 1212082, at *5.
2    "Because these torts do have scienter requirements," even under
     Plaintiffs' proposed rule, the good-faith defense is available to the
3    Union Defendants. *Carey*, 364 F.Supp.3d at 1230.

4    *Babb*, 378 F. Supp. 3d at 873.[10]

5         Consistent with the case law, every court to consider the issue has concluded that the good

6    faith defense bars §1983 claims seeking union repayment of the fair-share fees declared

7    unconstitutional in *Harris v. Quinn*, 134 S.Ct. 2618 (2014).  Those cases are on point here, and, as

8    *Danielson* recently held, the same result should follow with respect to §1983 claims seeking the

9    return of pre-*Janus* agency fees. *Id*., 340 F.Supp.3d at 1086-87.

10              **3.        Plaintiffs do not have an equitable claim to repayment**

11        Finally, Plaintiffs contend the good faith defense is not available because "they are seeking

12   restitution of money that the union took in violation of their constitutional rights. That is a claim

13   for equitable relief rather than a demand for money damages." Opp. at 18.  As observed in *Mooney*

14   *v. Illinois Education Ass'n*, 372 F. Supp.3d 690, 700 (C.D. Ill. 2019),

15            "not all relief falling under the rubric of restitution is available in
            equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.
16          204, 212, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). An equitable
            remedy typically seeks return of a specific object as opposed to the
17          monetary value of that object. *Montanile v. Bd. of Trs. of Nat'l.*
            *Elevator Indus. Health Benefit Plan*, ─── U.S. ───, 136 S.Ct. 651,
18          658–59, 193 L.Ed.2d 556 (2016). As the *Carey* court noted, the
            presupposition in cases like the one at hand is that all identifiable
19          money was used to fund union activities and, consequently, has
            already been dissipated; Plaintiff could receive the value of her fair-
20          share fees but not the specific money she paid. *Carey*, 364
            F.Supp.3d at 1232-33, 2019 WL 1115259, at *9. Plaintiff's citations

21   _____

22   [10] As seen in this quote, the *Babb* court disposed of the plaintiffs' argument regarding conversion
     as it applies to the good faith defense as well. *See* Opp. at 12. An action for conversion arises
23   when a defendant takes possession and control of property rightfully belonging to another. The
     gravamen of Plaintiffs' constitutional claim here is not that their property was taken, but that they
24   have been compelled to associate with and support the Union. Had their public employers kept
     Plaintiffs' fair-share fees for themselves or given them to a third party to support non-expressive
25   conduct (such as a retirement plan), Plaintiffs would have no First Amendment objection to the
     loss of those funds, even though the "seizure" of their "property" would be identical. *See*
26   *Glickman v. Wileman Bros. & Elliott, Inc*., 521 U.S. 457, 472 (1997) ("The mere fact that
     objectors believe their money is not being well spent does not mean [that] they have a First
27   Amendment complaint") (alteration original; citation omitted).

28

to cases concerning cows and cars, undissipated specific objects, seized in good faith but unconstitutionally (Doc. 14 at 23) are thus inapposite.[11]

Moreover, the facts Plaintiffs allege do not support an equitable claim, and "a plaintiff may not circumvent qualified immunity or the good faith defense simply by labeling a claim for legal damages as one for equitable restitution." *Babb*, 378 F.Supp.3d at 875, quoting *Carey v. Inslee*, 364 F.Supp.3d 1220, 1232 (W.D. Wash. 2019), *appeal docketed*, No. 19-35290 (9th Cir. April 11, 2019). The *Babb* court went on to state:

> The Court agrees with *Crockett* and *Carey*, both of which concluded that Plaintiffs' demand that the Union Defendants "refund" their agency fee payments sounds in law, not equity. The Plaintiffs' agency fees "paid for [the] ongoing costs of representation" and "[t]here is no segregated fund to which Plaintiffs' payments can now be traced, and therefore any relief would be paid from the Union Defendants' general assets." *Crockett*, 367 F.Supp.3d at 1006, 2019 WL 1212082, at *5. A "personal claim against the defendant's general assets ... is a legal remedy, not an equitable one." *Id*. (quoting *Montanile v. Board of Trustees*, — U.S. —, 136 S.Ct. 651, 658, 193 L.Ed.2d 556 (2016)).

*Id*. The cases cited by Plaintiffs are of no help to their theory and do not contradict the Supreme Court's most recent pronouncement on the issue in *Montanile*, 136 S.Ct. at 658 ("Equitable liens thus are ordinarily enforceable only against a specifically identified fund because an equitable lien "is simply a right of a special nature *over* the thing ... so that the very thing itself may be proceeded against in an equitable action;" citations omitted). Plaintiffs make no allegation that the monies taken have ever been segregated into and held in an identifiable fund rather than used for their agreed-on and intended purpose of funding collective bargaining, therefore precluding restitution by an equitable lien.[12] *See Diamond*, 2019 WL 2929875, at *5 (finding request for fee

---

[11] Plaintiffs' lead counsel here was lead counsel in *Mooney*.

[12] Moreover, that restitution would be available at all (an assumption in the cases cited by Plaintiffs, Opp. at 18) necessarily assumes that the fees were taken improperly. Because the cases are clear that *Janus* is not retroactive, and Plaintiffs indisputably voluntarily consented to the collection of fees, the fees were properly collected; thus, there has been no threshold improper taking.

1   refund to be legal remedy rather than equitable where, *inter alia*, "Plaintiffs fail to allege that the

2   fair share fees they paid are being held by *Union* Defendants in a specific fund").

### D.   Campos and Yang May Not Recover the Agency Fee Portion of Their Membership Dues

5   Plaintiffs argue that the Member-Plaintiffs (Yang and Campos) were "compelled" to pay

6   the union, and under *Janus*, are now entitled to a refund of the difference between the agency fee

7   and the membership dues. Opp. at 18. As already established, this claim should be dismissed

8   because (1) *Janus* is not retroactive so as to require refund of agency fees paid; (2) even if *Janus*

9   were retroactive, the Union collected such fees in good faith; and (3) the Member-Plaintiffs

10  affirmatively elected to become members and pay dues, *see* Section II.B, *supra* [checking one of

11  three options: "become a member *or* pay a service fee *or* opt not to become a member or pay a

12  service fee at the time of hire." Schmidt Dec., Exs. A, B (emphasis added)], so were not

13  "compelled." *See Babb*, 378 F.Supp.3d at 876 (rejecting claim for refund of agency fee portion of

14  membership dues); *Cooley*, 385 F.Supp.3d at 1080 (same).[13]

### E.   California Government Code § 1159 Does Not Allow Any Plaintiff to Recover Past Agency Fees Nor May Plaintiffs Proceed With State Law Claims to Recover Past Paid Dues

17  Plaintiffs concede that California Government Code § 1159 precludes Chandavong from

18  recovering past paid agency fees (and no such fees were paid by Campos and Yang). Opp. at 20.

19  Plaintiffs also passingly mention that they can use state law to recover past paid dues. Opp. at 21-

20  21. Presumably Plaintiffs are alluding to the miscellany of state law tort claims scattered through

---

[13] Plaintiffs offer a lengthy and confusing attempt to distinguish *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019), *appeal docketed* No. 19-35399 (9th Cir. April 12, 2019) and *Bermudez v. SEIU, Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) on this refund claim. Opp. at 19-20. (Notably, the Union cited these cases along with multiple others that Plaintiffs ignore completely.) The holdings in *Crockett* and *Bermudez*, have been endorsed and cited by multiple cases addressing the same subject, *see, e.g., Babb*, 378 F.Supp.3d at 872, so Plaintiffs' effort to "distinguish" *Crockett* (and by extension, *Bermudez*) by stating the court "did not understand" is merely conclusory as well as obviously incorrect. Moreover, even if the *Crockett* court had misunderstood exactly what the plaintiff there was asserting, it remains that *Janus* is not retroactive, and the good faith defense applies.

1 the complaint, including conversion, trespass to chattels, replevin, restitution, unjust enrichment.

2 *See, e.g.*, FAC, ¶64. In any event, Plaintiffs are mistaken.

3       As a threshold matter, Plaintiffs fail to counter the FDSA's citation to *Babb*, which held in

4 a substantially similar case that "§1159 is an independent and adequate grounds upon which to

5 dismiss Plaintiffs' state law claims [with prejudice]." *Babb*, 378 F.Supp.3d at 878. Moreover, as

6 noted by the FDSA in its opening brief, Plaintiffs make no effort to allege the requisite elements

7 of any of these torts, either in the complaint or in their opposition. In any event, Plaintiffs fail to

8 address or distinguish the holding in *Bermudez,* cited by the FDSA (MPA at 26, n.17), that "the

9 plaintiffs' state law claims, … fail because the dues were not wrongfully collected – the decision

10 to pay dues was not coerced and payment was a valid contractual term." 2019 WL 1615414, at *2.

11 So too here, warranting dismissal of Plaintiffs' shadow state law claims.

12     **F.**    **Chandavong's Claim No. 5 for Post-*Janus* Fees is Moot and Should Be Dismissed**

13

14       The basis of Plaintiffs' Claim No. 5 is the inadvertent deduction of two pay-cycles' worth

15 of agency fees from Chandavong's paychecks immediately post-*Janus*. As shown in the opening

16 brief, the FDSA rectified the error in February 2019 by providing Chandavong a check for the

17 amount plus legal interest, or $53.08. MPA at 29. Plaintiffs assert that Chandavong has not cashed

18 the check, apparently because he seeks attorneys' fees and costs specifically in connection with

19 this error, and so argues that the claim may not be dismissed as moot. *See* Opp. at 29.

20 Chandavong's decision not to accept the reimbursement does not keep the controversy alive, and

21 dismissal on mootness grounds is appropriate.

22       In *Diamond v. Pennsylvania State Educ. Ass'n*, another post-*Janus* case, the court

23 dismissed the request for repayment of post-*Janus* fees where the union had already repaid them

24 with interest, finding "claims for post-*Janus* fair-share-fee reimbursement are moot, as these fees

25 have undisputedly been repaid." 2019 WL 2929875 at *22. As noted in the FDSA's opening brief,

26 Chandavong admits that the Union has refunded the monies, MPA at 29 n.22, so he has

27 "undisputedly been repaid." Plaintiffs are conspicuously silent on the FDSA's citation to *Yohn v.*

28 *California Teachers Ass'n,* No. SACV 17-202-JLS-DFM, 2018 WL 5264076 (C.D. Cal. Sept. 28,

1    2018) (MPA at 28-29), where the union defendants likewise repaid post-*Janus* fees with interest.

2    Observing that the union repaid fees and also noting that, "in the unlikely event that some fees are

3    inadvertently collected, they attest that they will refund them," the court found therefore that the

4    request for repayment was moot. *Id.* at *2 .[14] And as was observed in *Danielson v. Inslee*, 345

5    F.Supp.3d 1336, 1339 (W.D. Wash. 2018), when the court there dismissed on mootness grounds,

6    here "no evidence suggests the [Union] has attempted to collect agency fees in violation of *Janus*."

7    "The standard for mootness is whether Defendants have shown it is 'absolutely clear that the

8    allegedly wrongful behavior could not be expected to recur.'" *Yohn*, 2018 WL 5264076, at *4

9    (quotations in original). On this clear standard, mootness should be found and Claim No. 5

10   dismissed.[15]

11          Plaintiffs argue that this claim carries with it attorneys' fees and costs under §1988, and so

12   mere repayment of the dues would not make him whole. Opp. at 28. But as the FDSA has shown,

13   Chandavong cannot state a claim under §1983 and therefore cannot recover fees under §1988, due

14   to the good faith defense and the lack of any state action by the Union. (His apparent claims under

15   miscellaneous state law tort claims fail as well because such claims are not pled, and even if they

16   were, do not entitle him to fees and costs.) "[A] lawsuit – or an individual claim – becomes moot

17   when a plaintiff *actually receives* all of the relief he or she could receive on the claim through

18

19   _____

20   [14] In finding mootness on this issue, the *Yohn* court noted that the union's repayment and its
     promise to refund if any other agency fees were inadvertently taken was evidence that the
     behavior could not reasonably be expected to reoccur, therefore there was no longer a controversy.

21   *Yohn*, 2018 WL 5264076, at *3 (finding that by promising to refund if any fees were taken, "the
     Union Defendants were merely reiterating their commitment to comply with *Janus*; this does not

22   create a controversy that can be redressed by the Court, but rather reinforces its mootness"). So too
     here. The monies have been refunded to the FDSA's sole agency fee payer and no monies will be

23   (or have been) taken going forward, ending the controversy. *See* FAC, Ex. 6 (letter from FDSA

24   President Eric Schmidt to Chandavong stating: "Your service fee was stopped on July 30th").

25   [15] Plaintiffs' authority is inapposite because the cases apply to rejected settlement offers. Both
     *Campbell-Ewald v. Gomez*, 136 S.Ct. 663, 672 (2016), and *Smith v. Greystone Alliance, LLC*, 772

26   F.3d 448, 451 (7th Cir. 2014) (Opp. at 29), concerned the question of whether an unaccepted
     settlement offer could moot a case. Here, the FDSA reimbursed Chandavong in February 2019,

27   and that payment, contrary to Plaintiffs' assertion (Opp. at 28) was not in settlement of his claim –
     it asked for nothing in return and was not contingent on any action by Plaintiffs, nor do Plaintiffs

28   contend as much.

1  further litigation." *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) (emphasis in

2  original). Chandavong has received the actual agency fees (with interest) that were inadvertently

3  deducted and, for the reasons stated above and in the Union's briefing, he cannot recover fees and

4  costs. Therefore, he has "actually received" all he could and the matter is moot.

5  **II.   PLAINTIFFS' VOLUNTARY ELECTION OF MEMBERSHIP BINDS THEM TO
   THEIR OBLIGATIONS UNDER THAT AGREEMENT, INCLUDING PAYMENT

6     OF DUES AND WITHDRAWAL PER THE MOU**

7        It is undisputed that Plaintiffs voluntarily joined the Union as members on their hire by the

8  Fresno Sheriff's Department. MPA at 2, 4. They signed cards on which they (1) checked the box

9  labeled, "I choose to become a member" (and did not check either of the other two boxes labeled,

10 "I choose NOT to become a member or pay a service fee" or "I elect to pay a service fee") (*see*

11 Schmidt Dec., Ex. A at 2, B at 3); and (2) signed an acknowledgement that "if I've *opted to*

12 *become a member*…," authorizing payment of dues "until [the] withdrawal period in the

13 Memorandum of Understanding for my job class and after being rescinded by me on the proper

14 card." *Id.* (emphasis added). It is further undisputed that Chandavong withdrew from membership

15 following proper protocol in December 2016 at the renewal period before adoption of the current

16 MOU, and paid an agency fee from then on until the *Janus* decision.

17       The FDSA showed that even if the Court finds that FDSA acted under color of state law by

18 continuing to deduct the Member-Plaintiffs' dues and holding them to the MOU's withdrawal

19 procedures, as a matter of law it did not violate their First Amendment rights by doing so. *Cooley*,

20 385 F.Supp.3d at 1079 (no First Amendment right to immediately resign union membership and

21 cease paying dues). MPA at 17-20.

22       Plaintiffs now argue, *first*, that the Member-Plaintiffs neither had nor have a valid and

23 binding contract with the FDSA because their signed membership cards "only authorize the

24 payment of money to the union through payroll deductions" but do not satisfy other prerequisites

25 to a contract. Opp. at 1. *Second*, they assert that even if there is a financial obligation, there is no

26 agreement to remain members. *Third*, they contend that even if they did have a contract with the

27 Union, once the MOU they agreed to on joining the Union expired and a new one replaced it, they

28

were no longer bound by the terms of the succeeding contracts. These assertions ignore both the facts and the law pertaining to agreements between a union and its members.

As expected, Plaintiffs once again try to recruit *Janus* to support their claims. But other than Chandavong, none of the other Plaintiffs were agency-fee payers, and *Janus* only addressed agency-fee payers. More to the point, *Janus* does not permit members to abandon their contractual commitments and succeeding cases have only solidly confirmed this holding. Because *Janus* does not apply to union members, any requirement as to the terms of waiver does not apply here.

### A. The Member-Plaintiffs Had a Valid and Binding Membership Agreement with the Union Governing Conditions of Membership

Plaintiffs do not dispute that they affirmatively and specifically consented to union membership. *Id*. Each card providing each new employee with three options: "become a member *or* pay a service fee *or* opt not to become a member or pay a service fee at the time of hire." Schmidt Dec., Exs. A, B (emphasis added). On its face, therefore, by signing the card and checking the member option, the Member-Plaintiffs opted to become members, bound by the timing and process restrictions on withdrawal *from membership* "specified in the Memorandum of Understanding." *Id. See* MPA at 3; FAC, Ex. 1 at 14 ("*members may withdraw* only by forwarding, by registered mail, notice of revocation of authority to withhold dues to the Association and by filing a withdrawal card at the same time according to procedures specified by the County during the full calendar month immediately preceding the expiration date of this MOU, or when their job classification is removed from the Unit;" emphasis added).

That the card together with the MOU is a contract is unassailable, and Plaintiffs provide no authority to the contrary.[16] *See Cooley*, 385 F.Supp.3d at 1080 ("The collective bargaining

---

[16] Plaintiffs refer to "acid tests" and other ostensible measures of what constitutes a contract without citation to any authority. Opp. at 21. As noted in the opening brief, in exchange for their financial commitment and to abide by the timelines and procedures of the MOU negotiated on their behalf, members have access to voting rights on the content of the MOU, as well as access to representation in administrative, civil, and criminal matters through a legal defense fund, certain insurance benefits including life insurance and long-term disability insurance, etc. MPA at 18. Contrary to Plaintiffs' argument then, consideration is demonstrably present. The fact remains, and the case law confirms, that when considering the relationship between a union and its members in the public sector, as here, the card and the MOU constitute an agreement.

1  agreement's limitation on the period of membership withdrawal is valid and enforceable, … and

2  Mr. Cooley's consent carries through his membership agreement"). *See also* MPA at 17-18.

3  *Cooley* is directly on point, and holds that the contract binds its members to certain obligations,

4  among them payment of dues and process for withdrawal. In that case, a public sector law

5  enforcement officer filed a class action against his union claiming violation of his First

6  Amendment rights by the union's refusal to accept his resignation from membership outside of the

7  union's prescribed period, and for continuing to deduct dues from his paycheck. The court held

8  that plaintiff Cooley, like the Member-Plaintiffs here,

9
> knowingly agreed to become [] dues-paying member[s] of the
> Union, rather than an agency fee-paying nonmember....That freely-
10
> made choice was not without consequences: *[they] had to pay dues*
> *as long as [they] remained a member; [they] could only withdraw*
11
> *from membership within a certain time frame; and, as a matter of*
> *logic and consistent with the structure of this arrangement, if [they]*
12
> *did not withdraw during that time frame [their] membership would*
> *automatically continue*. This was valid assent, and an intervening
13
> change in law does not taint that consent or invalidate his
> contractual agreement.
14

15  *Cooley*, 385 F.Supp.3d at 1080 (emphasis added).

16       As members, they are obligated to pay dues. Plaintiffs flatly ignore the myriad cases cited

17  by the FDSA holding that the Members-Plaintiffs cannot simply abandon their contractual

18  obligation to fulfill their financial commitment if they do not appropriately withdraw under the

19  MOU. MPA at 17.

20       **B.     Plaintiffs Are Bound By the Current MOU Regardless of When They Joined**

21       Plaintiffs argue for the first time that the only MOU that matters is the one that was in

22  place when they joined the Union (despite the fact that they attach the current MOU as Exhibit 1

23  to their complaint). Opp. at 22. With this foundation, Plaintiffs now assert that the Member-

24  Plaintiffs' obligations terminated at the expiration of the MOU in force at the time each of them

25  joined. *Id*. There are several problems with this argument.

26       First, Plaintiffs provide no authority for the novel proposition that members are bound only

27  so long as the MOU when they joined is in place. Plaintiffs are wrong. Both the membership card

28  and the MOU contemplate that union membership automatically continues *unless* a member elects

1   to withdraw prior to the MOU's termination. *See Cooley*, 385 F.Supp.3d at 1080 ("as a matter of

2   logic and consistent with the structure of this arrangement, if [they] did not withdraw during that

3   time frame [their] membership would automatically continue"). *See* Schmidt Dec., Exs. A, B.

4   [membership card stating "**this authorization shall remain in full force and effect until the**

5   **withdrawal period specified in the Memorandum of Understanding for my job class** and after

6   being rescinded by me on the proper card"; emphasis in original]; ECF FAC, Ex.1 at 18 [MOU

7   Article 17, providing procedure for membership withdrawal, including "forwarding, by registered

8   mail, notice of revocation of authority to withhold dues to the Association and … filing a

9   withdrawal card at the same time according to procedures specified by the County during the full

10  calendar month immediately preceding the expiration date of this MOU"]. Plaintiffs do not allege

11  or dispute that they filed their membership cards voluntarily and do not dispute that they did not

12  attempt to resign until August 2018.[17]

13          Plaintiffs' essentially argue that because the membership card does not expressly state that

14  it applies to subsequent MOUs, it terminates; yet nor does the card say it applies only to the

15  current MOU. Given the voluntary nature of the membership cards, the openly-stated requirement

16  that members may only resign during the window period expressly stated in each of the MOUs ,

17  coupled with the unequivocal state of the law, Plaintiffs' arguments must fail.

18          Plaintiffs' argument, moreover, betrays a lack of familiarity with public sector collective

19  bargaining. MOUs between local governments and labor unions, such as the one here, are

20  governed by the Meyers-Milias-Brown Act ("MMBA"), California Government Code § 3500 *et*

21  *seq*., which in turn relies on the precedent of, and guidance from, the National Labor Relations Act

22  ("NLRA"). *See Fire Fighters Union, Local 1186 v. City of Vallejo,* 12 Cal.3d 609, 617 (1974)

23  ("bargaining requirements of the National Labor Relations Act and cases interpreting them may

24  properly be referred to for such enlightenment as they may render in our interpretation of the

25  scope of bargaining under the Vallejo charter").

26

27  ───────────────────

28  [17] Plaintiffs also do not dispute that while Yang asked about terminating his membership, he did
    not ultimately do so the last time a contract was up for renewal. MPA at 4, n.5.

1   Under the MMBA, terms of an expired MOU continue in effect unless and until a new

2   MOU is negotiated and ratified, or impasse procedures are invoked. This practice follows long-

3   standing precedent under the NLRA that has held for well over 50 years that when a collective

4   bargaining agreement expires, the provisions of that agreement survive until a new MOU is

5   bargained, accepted, and executed. *See, e.g, NLRB v. Katz*, 369 U.S. 736 (1962); *Sacramento*

6   *County Retired Employees Ass'n v. County of Sacramento*, 975 F.Supp.2d 1150, 1169 (E.D. Cal.

7   2013) (Under the MMBA "the County has a duty to bargain with employees' unions before

8   changing wage or working conditions: "'The duty to bargain requires the public agency to refrain

9   from making unilateral changes in employees' wages and working conditions until the employer

10  and employee association have bargained to impasse....' "; citation omitted). This includes union

11  security provisions, *i.e.*, dues check-off, as here. *Lincoln Lutheran of Racine and SEIU-HCWI*, No.

12  30-CA-111099, 2015 WL 5047778 (NLRB Aug. 27, 2015). Whether the new contract is accepted

13  depends on a vote of the membership, of which Plaintiffs were members and had the opportunity

14  to review and ratify, or not. Finally, Plaintiffs concede that neither Yang nor Campos sought to

15  withdraw as members until after *Janus*. *See supra* and n.12.

16  Moreover, if the law were as Plaintiffs suggest, the requirement that members withdraw

17  under the formal requirements of the MOU would be rendered meaningless. Why include

18  language providing for a contractual window period for withdrawal from membership within one

19  month of the contract's expiration if, as Plaintiffs argue, members are out on the expiration of the

20  MOU? Were Plaintiffs' far-fetched theory true, if a person became a member when the MOU had

21  expired, that person would never be subject to a window period nor be subject to any terms of the

22  MOU, while a hypothetical person joining two weeks later (when a new MOU has been

23  negotiated) would be bound to the withdrawal obligations as well as all other provisions. Such a

24  result would be nonsensical. The agreements must be interpreted to give meaningful effect to these

25  provisions. *See Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 789 (9th

26

27

28

Cir. 2008) ("It is well settled that a contract should be interpreted so as to give meaning to each of its provisions").[18]

Finally, Plaintiffs' own actions expose the disingenuity of this contention. If Yang's obligations ceased at the expiration of his original MOU, for example, then any past efforts to explore withdrawal make no sense, and Chandavong could have paid agency fees many years before resigning his membership formally in 2016. Similarly, Plaintiffs offer no explanation as to why they continued to pay dues all these years. This argument, particularly in the absence of any authority to support it, should be soundly rejected.

C.    ***Janus* Does Not Apply to Full Members Such as Plaintiffs, and No "*Janus* Waiver" is Required Here**

Plaintiffs "readily acknowledge[] that constitutional rights can be waived, and *Janus* itself recognizes that public employees can agree to waive their *Janus* rights in legally enforceable contracts." Opp. at 23. As shown by the FDSA, Plaintiffs are parties to legally enforceable contracts with the Union. Plaintiffs argue, however, that *Janus* imposes certain "requirements for a public employee's waiver of constitutional rights" that have not been met here. Opp. at 22. *Janus* does no such thing. *See, e.g., Cooley,* 385 F.Supp.3d at 1079 ("Here, unlike in *Janus*, Mr. Cooley *voluntary [sic] agreed to become a dues-paying member of the Union, and acknowledged restrictions on when he could withdraw from membership*. … *Janus* did not automatically undo Mr. Cooley's agreement to be a member of the Union, nor did it render the collective bargaining agreement's withdrawal limitation provision unenforceable"; citing *Cohen v. Cowles Media Co.,* 501 U.S. 663, 672 (1991), *infra*; emphasis added).[19]

_____

[18] Moreover, the membership card does not refer to a *specific* MOU; it refers only to the "Memorandum of Understanding." Read together with the MOU withdrawal requirements, this phrase can only be interpreted to be the MOU in effect at any given time.

[19] While Plaintiffs appear to take issue with the FDSA's citation (MPA at 19) to *Cohen*, Opp. at 23-24, they do not dispute that in that case the Supreme Court held that "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Id.* at 672. Plaintiffs therefore concede that if Plaintiffs executed a valid and enforceable contract, there has been no constitutional violation.

1       Here as in *Cooley*, the Member- Plaintiffs entered into valid contracts with the Union.

2 Plaintiffs argue that *Janus* requires that the FDSA "show that Campos and Yang executed a valid

3 and effective *waiver* of their constitutional rights …and the waiver must meet the demanding

4 standards of *Janus*: 'freely given' and 'shown by clear and compelling evidence.'" Opp. at 23

5 (emphasis in original). As a threshold matter, Plaintiffs err in presuming that *Janus* applies to full

6 union members. Since the Supreme Court issued that decision, all cases to consider the question

7 have found *Janus* inapplicable to those who chose to become full union members, and that

8 contractual promises to pay full union dues must be enforced. *See, e.g., Cooley*, 385 F. Supp. 3d at

9 1079 ("the relationship between unions and their members was not at issue in "*Janus*"); *Belgau v.*

10 *Inslee*, No. 185620, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018); *Smith v. Superior Court,* No.

11 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018). Given the fact that *Janus* does not

12 apply here as regards the Member-Plaintiffs, "[t]he continued deduction of dues by the Union here

13 does not offend the requirement of freely given affirmative consent of nonmembers discussed in

14 *Janus*." *Cooley*, 385 F.Supp.3d at 1080.

15     **D.**    **Plaintiffs' Arguments That Campos Is Not Required to Arbitrate Fail for the Same Reasons Their Other Contract-Based Arguments Do**

16

17       Plaintiffs' general argument that Campos has no obligation to arbitrate this dispute with the

18 Union tracks their other arguments flowing from the membership agreement, *i.e.*, that he is not a

19 member, that he is not obligated to remain a member, that only the previous MOU is in effect, and

20 that there is no contract between Campos and the Union. Opp. at 24-25. For the reasons discussed

21 regarding these arguments elsewhere in this brief and the FDSA's opening brief, these theories are

22 meritless.

23       As additional argument, Plaintiffs assert, without citation, that Campos is not bound by the

24 Union's By-laws which provide for arbitration, but make no attempt to distinguish or counter the

25 Union's authority that a corporation's by-laws are a part of the contract between the union and its

26 members, thus conceding the point. MPA at 27-28. Plaintiffs then argue that the claims in the

27 instant lawsuit are not "*internal* disputes, claims or controversy," citing an inapposite Delaware

28 Chancery case that has no persuasive effect here. Opp. at 26 (emphasis added). Plaintiffs ignore

1    the fact that they are seeking to invalidate the contract they entered into with the FDSA, the terms

2    of which are set forth in more detail in the By-laws by which the Member-Plaintiffs are bound,

3    arguing that the terms of their agreement with the FDSA should be unenforceable. The agreement

4    governs the relationship between members and the Union and the enforceability and interpretation

5    of the terms of the agreement is precisely the type of internal dispute requiring arbitration.

6    **III.    PLAINTIFFS CONCEDE THAT CLAIM NO. 6 SHOULD BE DISMISSED AND
        THAT YANG AND CHANDAVONG LACK STANDING TO SEEK
7        PROSPECTIVE RELIEF IN CLAIM NO. 2; ACCORDINGLY, CLAIMS 2 AND 6
        SHOULD BE DISMISSED**

8

9        Plaintiffs concede that Claim No. 6 should be dismissed for lack of subject matter

10   jurisdiction. Opp. at 29.

11       Plaintiffs also concede that Yang and Chandavong lack standing to pursue equitable relief

12   under Claim No. 2. *Id*. at 27. Plaintiffs nevertheless argue that Yang and Chandavong are entitled

13   to damages under Claim No. 2. *Id*. at 28. As discussed above and in its opening brief, the good

14   faith defense precludes Chandavong from collecting damages in the form of refunds of agency

15   fees due to the good faith defense, and Yang's voluntarily assumed contractual obligations

16   precludes any refund of membership dues paid. *See* MPA at 29, n.19.

17       So too for Campos. As discussed above and in the FDSA's opening brief (MPA at 17-20),

18   Campos voluntarily joined the Union and so was subject to its restrictions on withdrawal and to

19   payment of dues. He therefore fails to state a claim on which relief can be granted, and is not

20   entitled to either equitable or monetary relief. Claim No. 2 should therefore be dismissed as to all

21   plaintiffs.

22   **IV.   CLAIM NO. 4 SHOULD BE DISMISSED BASED ON THE ARGUMENTS MADE
        BY THE ATTORNEY GENERAL**

23       The FDSA joins in and incorporates by reference the arguments made on reply by the

24   Attorney General regarding Claim No. 4. For those reasons and the ones stated in the Attorney

25   General's Opening Brief, Claim No. 4 should be dismissed.

26

27

28

1

**CONCLUSION**

2

For the reasons stated above and in the Union's opening brief, the Union requests the relief

3

set forth in the opening brief at 31-32.

4

5

Dated:  September 3, 2019          MESSING ADAM & JASMINE LLP

6

7

By     _/s/ Monique Alonso_

8

Monique Alonso
Attorneys for Defendant

9

FRESNO DEPUTY SHERIFF'S ASSOCIATION

10

00075795-2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28