# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CESAR CAMPOS, LATANA M. CHANDAVONG, NENG HER, HUGH YANG, and NICK VANG,**<br><br>**Plaintiffs**<br><br>v.<br><br>**FRESNO DEPUTY SHERIFF'S ASSOCIATION, COUNTY OF FRESNO, and XAVIER BECERRA in his official capacity as Attorney General of California,**<br><br>**Defendants** | CASE NO. 1:18-CV-1660 AWI EPG<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS, ORDER TO SHOW CAUSE, AND ORDER VACATING HEARING**<br><br>(Doc. No. 65) |

This is a dispute between current and former members of the Fresno County Sheriff's Department regarding the collection of union dues by Fresno County. On February 27, 2020, the Court granted a Rule 12(b)(1) motion and two Rule 12(b)(6) motions and dismissed the First Amended Complaint.[1] See Doc. No. 54. In response, Plaintiffs filed the Second Amended Complaint ("SAC"), which is the operative complaint. In general, Plaintiffs' contend that their union Defendant Fresno Deputy Sheriff's Association ("FDSA"), and their employer Defendant Fresno County ("the County") have unconstitutionally refused to accept their resignations from the FDSA, which has resulted in the unconstitutional collection of dues, service fees, or vacation hours from their paychecks. Currently before the Court is the FDSA's combined Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion will be granted.

---

[1] As part of that order, the California Attorney General was dismissed from this case without leave to amend because the Court held that Cal. Govt. Code § 1157.12(b) was constitutional. See Campos v. Fresno Deputy Sheriffs Association, 441 F.Supp.3d 945, 961 (E.D. Cal. 2020).

**LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**BACKGROUND**

From the Complaint and the Court's Docket, Plaintiffs Cesar Campos ("Campos"), Latana Chandavong ("Chandavong"), and Nick Vang ("Vang") are Deputy Sheriffs in the Fresno County

2

1  Sheriff's Department.  Plaintiff Neng Her ("Her") is a Community Service Officer in the Fresno
2  County Sheriff's Department, and Plaintiff Hugh Yang ("Yang") is a retired Bailiff Deputy Sheriff
3  from the Fresno County Sheriff's Department.  Yang retired in March 2019.  Plaintiffs allege that
4  they have "a right to resign [from] their union at any time."  Despite this right, the FDSA
5  unlawfully refuses to accept Plaintiffs' resignations.  SAC ¶ 10.

6       Campos, Chandavong, Vang, and Yang each attempted to resign their membership with
7  the FDSA.  Campos and Yang attempted to do so in August 2018 following the Supreme Court's
8  decision in *Janus v. AFSCME*, 138 S.Ct. 2448 (2018).  Vang attempted to resign his membership
9  in February 2020.  Chandavong attempted to resign his membership in 2014 but was not permitted
10 to do so until December 2016.  From December 2016, the FDSA continued to take fair share
11 service fees from Chandavong.  When these Plaintiffs attempted to resign their FDSA
12 membership, the FDSA refused to honor the resignations and continued to take dues from their
13 paychecks.  In each instance, the FDSA responded that the Plaintiffs' resignations were ineffective
14 because they did not conform with Memorandum of Understanding ("MOU") Article 17.  The
15 MOU is an agreement between the County and the FDS.  MOU Article 17 indicates that
16 memberships may be resigned one month before the MOU expired.  The County and the FDSA
17 continued to deduct membership fees from Campos, Vang, and Yang and did not recognize their
18 resignations.[2]  Plaintiffs allege the failure to immediately honor and implement their initial
19 attempts to resign violate the First Amendment and the Supreme Court's rulings in *Janus* and
20 *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977).

21      Campos, Vang, and Yang completed a "County of Fresno Employee Representative
22 Authorization Card" ("ERA Card").[3]  The ERA Card reads: "Most Fresno County Employees are
23 represented by a  union/association, which is certified under the ordinance Code as exclusive
24 representative.  The County and these groups have agreed that each employee has the option to

---

[2] In a prior motion to dismiss, the Court found that a claim by Chandavong for service fees collected by the FDSA and the County post-*Janus* were mooted when the FDSA repaid Chandavong those fees plus interest.  See Campos v. Fresno Deputy Sheriffs Association, 441 F.Supp.3d 945, 954-55 (E.D. Cal. 2020).

[3] Chandavong alleges that he has no recollection of signing an ERA Card, and Defendants have not produced an ERA Card signed by Chandavong.

3

become or not become a member or pay a service fee.  Therefore, check your choice under No. 10 and 11 below." See Doc. No. 40-4; SAC ¶ 18.  Item 10 is entitled "Status" and has three boxes to check, "New," "Cancel," and "Change"; Campos checked "New." Id.  Item 11 is entitled "Deduction Options," and required an employee to check one of three boxes. Id.  The three "deduction options" are:  "I choose to become a member," "I choose NOT to become a member or pay a service fee," and "I elect to pay a service fee." Id.  Campos, Vang, and Yang selected "I chose to become a member."  On the back of the card is a paragraph that is entitled in bold type and all caps:  "Important – Please Read The Following Paragraph Before Signing Below." Id.  That paragraph reads:  "I understand that, if I have opted to become a member, my signature below authorizes the deduction of any amounts voted for pursuant to the provisions of my organization's constitution or bylaws at a general membership meeting and certified by the President of the organization and <u>this authorization shall remain in force and effect until the withdrawal period specified in the Memorandum of Understanding for my job class</u> and after being rescinded by me on the proper card." Id. (underline in original).

      Plaintiffs allege that the ERA Cards do not obligate them to remain in the FDSA until the withdrawal period specified in the existing MOU.  This is because:  (1) the ERA Card is not supported by consideration and thus, cannot be a contract; (2) the ERA Card does not purport to require Plaintiffs to maintain their membership in the union, rather, it authorized only the payment of money through payroll deductions; (3) the ERA Cards describe a MOU in existence at the time the cards were signed, they do not refer to withdrawal periods in a future MOU; and (4) the ERA cards do not satisfy *Janus*'s requirement of a waiver of constitutional rights.

      Additionally, Plaintiffs allege that the FDSA takes 5.7 hours of an employee's vacation time and transfers those hours to its president to enable him to conduct union-related business.  In February 2016, the FDSA started taking vacation hours from Her, even though Her had not become an FDSA member.  The County and the FDSA continue to divert these vacation hours even after *Janus* and have done so without Her's consent.  The FDSA continues to take vacation hours from Campos, Chandavong, and Yang, despite their resignations from the FDSA and despite the FDSA recognizing that Chandavong was no longer an FDSA member post-*Janus*.

1  From the above allegations, SAC brings claims under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and several state law torts, including conversion, trespass to chattels, replevin.

**DEFENDANT'S MOTION**

*Defendant's Arguments*

With respect to the first cause of action, the FDSA argues that Plaintiffs failed to follow this Court's instructions in the prior dismissal. Plaintiffs have not included factual allegations regarding the invalidity of consent or invalidity of the membership contract. Instead, the relevant allegations are simply legal conclusions. Further, Plaintiffs improperly rely on *Janus* as part of their argument that they can unilaterally drop their membership. This Court already concluded that *Janus* does not create a right to unilaterally drop membership when membership was voluntarily entered into. Additionally, there are no new allegations in the SAC that would bring the FDSA within the ambit of being a state actor.

With respect to the third cause of action regarding vacation hours, the FDSA argues that this claim is moot as to Her and Chandavong and fails to state a claim against the remaining Plaintiffs. First, as of the April 27, 2020 pay period, vacation hours are no longer deducted from non-FDSA members and all such previously deducted vacation hours have been restored to non-members retroactively to July 1, 2018 (i.e. immediately post-*Janus*). This moots the claims of Her and Chandavong. Second, Campos and Yang voluntarily joined the FDSA. Thus, they are not entitled to restoration of hours due to their contractual obligations to FDSA.

With respect to the fourth cause of action, FDSA argues that claim for attorneys' fees are not appropriate as a stand alone cause of action. Instead, they are post-litigation matters.

Finally, after this motion was taken under submission, the FDSA filed two notices of recent authority, an unpublished district court case, *Savas v. California State Law Enforcement Agency*, 2020 U.S. Dist. LEXIS 164598 (S.D. Cal. Sept. 9, 2020), and a published opinion from the Ninth Circuit, *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020).

*Plaintiffs' Opposition*

With respect to the first cause of action, Plaintiffs argue that there are sufficient factual

5

allegations that demonstrate the absence of invalidity or invalidity of consent or contract.  The SAC alleges that the ERA Cards:  (1) are not contracts because they are not supported by consideration, (2) do not require an employee to maintain membership in the union, rather they address only payroll deductions in relation to the withdrawal period of the MOU; (3) only describe an MOU that existed at the time the card was signed; and (4) do not satisfy *Janus*'s requirement for a waiver of constitutional rights.  The FDSA does not address the substance of these allegations or how the substance of the allegations would affect the validity of consent or a contract.  Further, the SAC sufficiently alleges that the FDSA acted under color of state law because the FDSA acted pursuant to MOU Article 17, and the MOU is an agreement between the FDSA and the County.

With respect to the third cause of action, Plaintiffs argue that it is not moot because the FDSA voluntarily stopped its conduct during litigation.  Under the voluntary cessation doctrine, a defendant's voluntary cessation of unlawful conduct cannot moot a plaintiff's claim for declaratory and injunctive relief.  It is not absolutely clear that the FDSA and the County will no longer divert vacation hours from non-members because they have shown that they are willing to divert such hours against the Plaintiffs' wishes and they could start the practice again if they decide to do so.  There are no forces that are external to this litigation that could hinder the County and the FDSA from reverting back to this practice.  Further, the third cause of action is not moot because the FDSA has not given Plaintiffs all of the retrospective relief they have demanded. Plaintiff has requested all hours taken, not just vacation hours taken from Her and Chandavong after July 1, 2018. Further, the FDSA cannot moot the Plaintiffs' claims by unilaterally offering the relief that they demand.  If a claim is not accepted, the claim remains alive.  Finally, Campos and Yang did not consent to having the vacation hours taken since there is nothing in the ERA Cards that address surrendering vacation hours.  While vacation hours are addressed in the MOU, the MOU is a contract between the FDSA and the County.  The MOU does not show that Campos or Yang personally consented to the continued diversion of their vacation hours.

With respect to the fourth cause of action, Plaintiffs agree that fees and costs under § 1988 are to be sought and litigated after all claims have been resolved.  The fourth cause of action was

inserted in response to the Court's prior dismissal order and is intended to make clear that Chandavong is not abandoning his claims for fees and costs. Plaintiffs request that the Court withhold judgment on the issue of fees until the conclusion of the litigation.

Finally, following the FDSA's notices of intervening authority, Plaintiffs did not respond to either notice and did not address *Belgau*.

*Discussion*

1. First Cause of Action – 42 U.S.C. § 1983 – First Amendment

As indicated above, the first cause of action is premised on the assertion that the Plaintiffs enjoyed a First Amendment right to drop their union memberships at any time. In the prior motion to dismiss, this Court held in relevant part: "Because *Janus* does not speak to a [voluntary] union member's ability to unilaterally drop his membership or stop paying dues, the allegation sin the FAC regarding FDSA's refusal to honor the Plaintiffs' unilateral requests to drop their membership status and stop collecting dues do not plausibly show a violation of *Janus*/the First Amendment." Campos v. Fresno Deputy Sheriff's Ass'n, 441 F.Supp.3d 945, 957 (E.D. Cal. 2020). The SAC tries to avoid this conclusion by stating that Supreme Court precedent prior to *Janus* recognizes the constitutional right to unilaterally resign a union membership. This assertion is contrary to binding Ninth Circuit authority.

In *Belgau v. Inslee*, the Ninth Circuit rejected the argument that those who voluntarily join a union have a First Amendment right to unilaterally resign their memberships. See Belgau, 975 F.3d at 950-52. Relying on pre-*Janus* authority, *Belgau* held in relevant part:

> The First Amendment does not support Employees' right to renege on their promise to join and support the union. This promise was made in the context of a contractual relationship between the union and its employees. When "legal obligations . . . are self-imposed," state law, not the First Amendment, normally governs. See Cohen v. Cowles Media Co., 501 U.S. 663, 671 (1991); Erie Telecomms., Inc. v. City of Erie, Pa., 853 F.2d 1084, 1089-90 (3d Cir. 1988) (distinguishing a First Amendment challenge from a claim to enforce "contractual obligations under the franchise and access agreements"). Nor does the First Amendment provide a right to "disregard promises that would otherwise be enforced under state law." Cohen, 501 U.S. at 671; cf. Dietemann v. Time, Inc., 449 F.2d 245, 249 (9th Cir. 1971) ("The First Amendment is not a license to trespass, to steal, or to intrude by electronic means into the precincts of another's home or office.").

Id. at 950.

In the prior motion to dismiss, the Court declined to credit the assertion that Plaintiffs were compelled to join the FDSA. See Campos, 441 F.Supp.3d at 956. The Court did so because the relevant language of the applicable MOU and the ERA Cards demonstrated that the Plaintiffs voluntarily joined the FDSA. See id. There are no allegations in the SAC that Plaintiffs involuntarily joined the FDSA or otherwise address the Court's analysis regarding the voluntarily nature of Plaintiffs joining the FDSA. Therefore, because the Plaintiffs were not compelled to join the FDSA but rather did so voluntarily, under *Belgau*, the Plaintiffs do not have a First Amendment right to resign unilaterally at any time and to stop paying dues. See Belgau, 975 F.3d at 950. The failure of either the County or the FDSA to acknowledge and give effect to the Plaintiffs' requests to resign their memberships and to stop collecting dues does not violate the First Amendment. See id.

Additionally, the first cause of action alleges that the ERA Cards do not constitute valid constitutional waivers of First Amendment rights. The SAC quotes *Janus* that a waiver of First Amendment rights must be "freely given and shown by 'clear and compelling evidence.'" SAC ¶¶ 23, 54 (quoting Janus, 138 S.Ct. at 2486). *Belgau* addressed an identical argument and rejected it. In relevant part, *Belgau* explained:

> In an effort to circumvent the lack of compulsion, Employees define the relevant First Amendment right as the freedom not to pay union dues without "consent that amount to the waiver of a First Amendment right." In arguing that *Janus* requires constitutional waivers before union dues are deducted, Employees seize on a passage requiring any waiver of the First Amendment right to be "freely given and shown by 'clear and compelling' evidence." Janus, 138 S. Ct. at 2486. This approach misconstrues *Janus*. The [Supreme] Court considered whether a waiver could be presumed for the deduction of agency fees only after concluding that the practice of automatically deducting agency fees from nonmembers violates the First Amendment. It was in this context that the Court mandated that nonmembers "freely," "clearly," and "affirmatively" waive their First Amendment rights before any payment can be taken from them. Id. The Court discussed constitutional waiver because it concluded that nonmembers' First Amendment right had been infringed, and *in no way created a new First Amendment waiver requirement for union members before dues are deducted pursuant to a voluntary agreement.*

Belgau, 975 F.3d at 951-52 (emphasis added). Again, the Court has concluded that Plaintiffs voluntarily joined the FDSA. See Campos, 441 F.Supp.3d at 956. Because Plaintiffs were not compelled to join the FDSA, the ERA Cards do not need to constitute clear and compelling evidence of freely given consent for purpose of the First Amendment. Belgau, 975 F.3d at 951-52.

In sum, because Plaintiffs voluntarily joined the FDSA, *Belgau* forecloses any claims for violations of either *Janus* or the First Amendment with respect to the FDSA's refusal to accept Plaintiffs' resignations and the County's continued deductions of membership dues. See id. at 950-52. Without a violation of the First Amendment, there is no plausible claim under 42 U.S.C. § 1983. See id. at 946 (holding that a § 1983 claim requires a showing of a deprivation of a right secured by the Constitution or federal law and that the deprivation was committed under color of state law); Heineke v. Santa Clara Univ., 965 F.3d 1009, 1012 (9th Cir. 2020) (same). Dismissal of the first cause of action is appropriate.[4]  See Belgau, 975 F.3d at 950-52. Because there is no First Amendment violation pursuant to *Belgau*, dismissal will be without leave to amend.

2.     Third Cause of Action[5]

Under the third cause of action for confiscating vacation hours, Plaintiffs request the following relief:  (1) restoration of all vacation hours taken from Campos and Chandavong from the dates they first announced their resignations; (2) restoration of all vacation hours taken from Her; (3) compensatory damages for Yang from November 14, 2016 (the date he first announced his resignation) forward; (4) hold the County and FDSA jointly and severally liable; (5) permanently enjoin FDSA and the County from taking or transferring vacation hours from Campos, Chandavong, and Her unless these Plaintiffs affirmatively consent in writing to donate

---

[4] The Court notes that dismissal of the first cause of action against the FDSA would also be appropriate under *Belgau* because the SAC does not sufficiently indicate that the FDSA did anything under color of state law. *Belgau* found that there was no coercion or oversight regarding whether employees became union members, that merely collecting payroll deductions pursuant to an employee's authorization was a ministerial act that was little more than the provision of "machinery" for implementing a private agreement between the employee and the union, and that, while a contractual relationship between Washington and the union existed, the relationship did not rise to the level of a symbiotic relationship. See Belgau, 945 F.3d at 947-49. Also, *Belgau* held that the plaintiffs' alleged constitutional harms were not traceable to a government policy or statute, but were traceable to the particular private agreements between the plaintiffs and the union. See id. at 946-47. Thus, *Belgau* found no state action by the private union. See id. at 946-49. *Belgau*'s analysis would seem to apply in this case. The SAC's allegations amount to little more than showing that the County has a contractual relationship with the FDSA and that the County collected payroll deductions pursuant to Cal. Gov. Code § 1157.12(b), a provision very similar to RWC 41.80.100 (the statutory provision at issue in *Belgau*). Plaintiffs cite no authority that the mere incorporation of one provision from the MOU regarding withdrawal of consent is sufficient to make the FDSA a state actor or to make its conduct deemed to be performed under the color of state law. Further, the heart of the dispute between Plaintiffs and the FDSA involves the contractual obligations that may or may not arise from the Plaintiffs voluntarily joining the FDSA.

[5] Despite the Court's admonition in the prior dismissal order to allege each state and federal cause of action separately, the SAC does not clearly explain whether the third cause of action is brought under 42 U.S.C. § 1983 and 22 U.S.C. § 2201, the various state law torts, or both federal and state law. For now, the Court's discussion of the third cause of action will be limited to claims under § 1983 and § 2201.

vacation hours to FDSA; (6) award attorneys' fees under 42 U.S.C. § 1988; and (7) any other relief that the Court deems just, proper, or equitable.  After review, the Court finds that some of claims of Plaintiffs are moot and other claims fail to state a plausible claim.

        a.      Mootness

Mootness is a jurisdictional issue.  Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003). "[A] case is moot when the issues are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Powell v. McCormack, 395 U.S. 486, 496 (1969); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (9th Cir. 2011).  That is, if events subsequent to the filing of the case resolve the parties' dispute, the court must dismiss the case as moot.  Pitts, 653 F.3d at 1087. "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  Bayer v. Neiman Marcus Grp., 861 F.3d 853, 862 (9th Cir. 2017). Therefore, if "there is no longer a possibility that [a plaintiff] can obtain relief for his claim, that claim is moot and must be dismissed for lack of subject matter jurisdiction."  Foster, 347 F.3d at 745.

Here, the vacation hours of Her and Chandavong have been restored retroactively to July 1, 2018.[6]  Therefore, the Court cannot order any further effective relief as requested in the SAC regarding those particular hours.  See Foster, 347 F.3d at 745.

Further, there appears to be no real danger that the FDSA will take the vacation hours of Her or Chandavong or any other County employee who is not an FDSA employee.  The County and the FDSA have agreed to immediately stop taking vacation hours from non-members.  See Schmidt Dec. ¶ 2 & Ex. A.  It is true that voluntary cessation of conduct will generally not moot a case.  See Martinez v. Wilson, 32 F.3d 1415, 1420 (9th Cir. 1994).  "[M]ere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'"[7]

---

[6] The Court considers the Schmidt Declaration and Exhibits A and B thereto as part of a factual challenge to jurisdiction under Rule 12(b)(1).  See Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (discussing facial and factual challenges to jurisdiction under Rule 12(b)(1)).

[7] The FDSA argues that its actions regarding vacation hours was in response to *Janus* and not this litigation. However, *Janus* was decided on June 30, 2018, and the FDSA did not amend the MOU until April 24, 2020.  Further, the FDSA has submitted no declarations that explain why the MOU was only amended in late April 2020 during the

NRDC v. County of L.A., 840 F.3d 1098, 1104 (9th Cir. 2016) (quoting in part Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

Here, however, the County and the FDSA have amended the existing MOU so that vacation hours will not be taken from non-FDSA members. See Schmidt Dec. ¶ 2 & Ex. A. Moreover, the FDSA has stated in its briefing, "Given that the vacation hour deductions from non-members here are tantamount to fair share fees, which are now precluded as a matter of law, there is no reasonable probability that they will be reinstated." Doc. No. 68 at 8:1-3. That is, the FDSA acknowledges that under *Janus*, taking both fair share fees and vacation hours from a non-consenting non-FDSA member would be unlawful.[8] Further, numerous courts have found that a union's compliance with *Janus* will moot claims for prospective relief. E.g. Gabriele v. SEIU, Local 1000, 2020 U.S. Dist. LEXIS 103328, *4 (E.D. Cal. June 11, 2020) (and cases cited therein). The Court is unaware of any court that has found a union's compliance with *Janus* did not moot a claim for prospective relief relating to fees collected from non-members. Finally, the Ninth Circuit has recognized that a change in the law by Congress can moot litigation relating to the pre-amendment statute. See Martinez, 32 F.3d at 1420. *Janus* is very similar to an amended statute. The Court agrees with the District of Oregon's conclusion that, "[w]hile changes in the law resulting from executive action can be reversed with relative ease, a reversal of Supreme Court precedent is analogous to a statutory change that 'bespeaks finality' and is not a change that could easily be altered." Cook v. Brown, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019). Therefore, given the FDSA's actions regarding vacation hours from non-members (including amending the MOU), the FDSA's express recognition that taking vacation hours from non-members would be unlawful, the apparent universal treatment of injunctive relief regarding *Janus* issues by the courts, and the fact that *Janus* is a Supreme Court ruling that changed the law of the land, the Court finds

---

pendency of this lawsuit. The nearly two year gap between *Janus* and the MOU amendment does not of itself support a conclusion that the amendment was solely in response to *Janus*. Nevertheless, because the Court finds that the claim for prospective relief is moot notwithstanding the general rule that voluntary cessation ordinarily does not moot a controversy, the Court makes no findings at this time regarding the FDSA's motivation in amending the MOU to prohibit the collection of vacation hours from non-FDSA members.

[8] For purposes of judicial estoppel, the Court is persuaded by and relying on this representation by the FDSA. See New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (setting three factors for determining whether to invoke judicial estoppel); Arizona v. Tohono O'odharm Nattion, 818 F.3d 549, 558 (9th Cir. 2016).

that the FDSA has adequately shown that taking vacation hours from non-FDSA members "could not reasonably be expected to recur." Friends of the Earth, 528 U.S. at 189; NRDC, 840 F.3d at 1104. The Court concludes that the prosepective relief requested by Her and Chandavong is moot.

        b.      Plausible Claims

With respect to the claims of Her that pre-date July 1, 2018/*Janus*, the SAC alleges that vacation hours were taken even though he was not a member of the FDSA. There are no allegations that indicate that the hours were taken in violation of the MOU or that the hours were otherwise improperly taken. That is, the only basis for Her's claim is that he is not and was not a member for the FDSA. In *Danielsen v. Inslee*, 945 F.3d 1096, 1104-05 (9th Cir. 2019), the Ninth Circuit recognized a good faith defense for unions whose pre-*Janus* conduct was consistent with *Abood v. Detroit Bd. of Educ.* As in *Danielsen*, there are no allegations that the FDSA's collection of vacation hours was inconsistent with or violative of *Abood*. The Court cannot find that the fact that Her was not a member of the FDSA supports a claim for vacation hours that were taken prior to July 1, 2018/*Janus*. Cf. Danielsen, 945 F.3d at 1104-05.

With respect to Chandavong's claims that pre-date July 1, 2018/*Janus*, this claim is similar to Her's claims. In December 2016, Chandavong's resignation was accepted by the FDSA, but he continued to pay fair share service fees until July 30, 2018, and the FDSA continued to take vacation hours from him. Like Her, there are no allegations that the FDSA's collection of vacation hours was contrary to or violative of *Abood*. There are only allegations that Chandavong repeatedly attempted to resign his membership, that the FDSA eventually accepted the resignation in December 2016, and that the FDSA continued to take fair share fees and vacation hours after he resigned. The fact that Chandavong was not a member of the FDSA from December 2016 onward does support a claim for vacation hours that were taken prior to July 1, 2018/*Janus*. Cf. id.

With respect to Yang, he retired from the County on March 29, 2019. He seeks compensatory damages for vacation hours taken from November 14, 2016 (the time he first resigned) to the time of his retirement. Between November 2016 and March 2019, Yang attempted to resign from the Union on multiple occasions. Each time, the FDSA refused to accept the resignation because the resignation did not comply with MOU Article 17. However, Yang

does not allege that he involuntarily joined the FDSA. Further, there are no allegations that Yang ever requested that his vacation hours not be taken or that he did not know that his vacation hours were being taken for FDSA purposes. Therefore, the allegations and reasonable inferences from the SAC are that the vacation hours are like the membership dues, they are taken regularly for FDSA purposes as a result of FDSA membership. The FDSA's refusal to honor Yang's resignation had the effect of Yang not only remaining a member, but also paying dues and donating vacation hours. Pursuant to *Belgau*, the fact that the FDSA refused to accept Yang's resignation outside of the bounds set by MOU Article 17 is a contractual dispute between the FDSA and Yang that does not support a § 1983 claim for violation of the First Amendment. See Belgau, 975 F.3d at 946-52. Without a First Amendment violation, Yang has no plausible federal claim under the third cause of action.

With respect to Campos, he seeks restoration of the vacation hours that were taken from him after the date that he first attempted to resign. Campos's claims are like Yang's. The vacation hours were taken as a result of Campos's membership within the FDSA. The failure to recognize the resignation, and the resulting continued collection of dues and vacation hours from him, is the result of a contractual dispute between Campos and the FDSA. Per *Belgau*, this dispute does not support a § 1983 claim for a violation of the First Amendment. See id.

In sum, pursuant to *Danielsen* and *Belgau*, no plausible federal claims are alleged under the third cause of action and dismissal is appropriate. Because it does not appear that amendment can cure these deficiencies, dismissal will be without leave to amend.

   3.   Fourth Cause of Action

All parties agree that the issue of attorneys' fees may be handled through a post-litigation motion after the remaining causes of action have been resolved. In light of Chandavong's opposition and the analysis of the Court's prior dismissal order, the Court finds that the fourth cause of action is simply an attempt to preserve the attorney's fees issue with respect to a claim that was held to be moot (post-*Janus* collection of fair share fees from Chandavong). The briefing and representations of the parties demonstrate that everyone understands that Chandavong may pursue attorneys' fees for his mooted claim after the substance of the other causes of action have

been resolved.[9] Given the agreement of the parties, the Court will dismiss the fourth cause of action without leave to amend. However, this dismissal is not intended to address the merits of any claim for attorneys' fees that Chandavong has, nor does this dismissal in any way prevent Chandavong from filing a "post-litigation" motion for attorneys' fees.[10]

### 4. Order to Show Cause

It appears to the Court that the rationale for dismissing the first and third causes of action against the FDSA apply equally to the County. Nevertheless, the County has not moved to dismiss any claims against it. Therefore, the Court finds that it is appropriate for Plaintiffs to show cause why the federal claims alleged against the County should not be dismissed pursuant to *Belgau* and *Danielsen*.

### 5. Second Cause of Action

The Second Cause of Action consist of state law tort claims. The Court has resolved the only federal claims (except for attorneys' fees under 42 U.S.C. § 1988) against the FDSA. Further, at this time, it is likely that the federal claims against the County will be resolved. Under these circumstances, the Court will reserve making any rulings with respect to Plaintiffs' state law claims. If the Court resolves the federal claims, it will likely decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the second cause of action and any state law claims that may be embedded within the third cause of action.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant the FDSA's Rule 12(b)(1) and Rule 12(b)(6) motion (Doc. No. 65) is GRANTED in part;

---

[9] As acknowledged by the FDSA, see Doc. No. 68 at 6 n.3, this also applies to the mooted portion of the third cause of action.

[10] The Court notes that the FDSA also argues that there is an insufficient indication that Chandavong was a prevailing party and thus, he is not entitled to attorneys' fees. However, the Court finds that any substantive arguments regarding attorneys' fees should be made once Chandavong actually attempts to recover them. The fourth cause of action was merely a "place holder" that was intended to indicate that the attorneys' fees issue was not being abandoned. Therefore, the Court will not address any substantive arguments regarding attorneys' fees at this time.

2. The first cause of action is DISMISSED without leave to amend;

3. The federal claims within the third cause of action are DISMISSED without leave to amend;

4. The fourth cause of action is DISMISSED without prejudice to asserting a post-litigation motion under 42 U.S.C. § 1988;

5. The Court reserves at this time rulings as to Plaintiffs' state law claims;

6. Within fourteen (14) days of service of this order, Plaintiffs will show cause in writing why the federal claims alleged against the County should not be dismissed;

7. Within seven (7) days of Plaintiffs' response, Defendants may file a reply to Plaintiffs' response; and

8. In light of the additional briefing that has been ordered, the November 18, 2020, pre-trial conference is VACATED.[11]

IT IS SO ORDERED.

Dated:   November 11, 2020

_____
SENIOR  DISTRICT  JUDGE

---

[11] There have been a number of stipulations regarding initial disclosures and discovery, as well as a proposed order that set an entirely new scheduling order. Although it is apparent that the initial scheduling order is no longer feasible, the initial scheduling order has not been amended and the November 18, 2020 pre-trial conference date has not been vacated. Therefore, the Court vacates the currently scheduled pre-trial conference date.