UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR CAMPOS, LATANA M. CHANDAVONG, NENG HER, HUGH YANG, and NICK VANG,<br><br>Plaintiffs<br><br>v.<br><br>FRESNO DEPUTY SHERIFF'S ASSOCIATION, COUNTY OF FRESNO, and XAVIER BECERRA in his official capacity as Attorney General of California,<br><br>Defendants | CASE NO. 1:18-CV-1660 AWI EPG<br><br>ORDER FOLLOWING ADDITIONAL BRIEFING AND ORDER SEVERING MATTER |

    This is a dispute between current and former members of the Fresno County Sheriff's Department regarding the collection of union dues and vacation hours by the County of Fresno ("the County") for the benefit of the Fresno Deputy Sheriff's Association ("FDSA"). Plaintiffs seek relief under state law theories and *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018) ("*Janus*"). The active complaint is the Second Amended Complaint ("SAC"). On November 12, 2020, the Court granted in part FDSA's Rule 12(b)(1) and Rule 12(b)(6) combined motion to dismiss. See Doc. No. 74. The Court dismissed the first and third causes of action (which alleged only federal law claims) and issued an order to show cause why the federal claims against the County should not be dismissed for the same reasons that dismissal was appropriate as to the FDSA. See id. The Court did not address the state law causes of action but reserved a ruling pending receipt of the additional briefing. See id. After receiving additional briefing, the Court

dismissed without leave to amend the first cause of action and the third cause of action for conduct that post-dated *Janus*. See Doc. No. 79. Based on the parties' submissions, the Court also ordered the parties to file additional briefing regarding whether the good faith defense has been applied to a municipal entity like the County, whether any post-*Janus* cases have found a municipal entity like the County liable for taking fees or vacation hours, and whether *Janus* applies retroactively. See id. The County and Plaintiffs have now fully responded to the Court's order for additional briefing. For the reasons that follow, the Court will not dismiss any further claims, will sever the claims of Plaintiffs Her and Chandavong, permit these Plaintiffs to amend with respect to the FDSA, decline to exercise supplemental jurisdiction over the remainder of this case, and direct the Clerk to close this case.

*Plaintiffs' Position*

In prior briefing, Plaintiffs argued that Her and Chandavong still had viable claims against the County for the County's confiscation of vacation hours that pre-dated *Janus*.

In supplemental briefing, Plaintiffs have cited numerous lower courts that have held that municipal entities are categorically barred from asserting a good-faith type of defense (which might be shorthand for qualified immunity) and no case questions whether a differing analysis or defense from that in *Owen v. City of Independence*, 445 U.S. 622 (1980) should apply. Only one unpublished case with no substantive analysis has applied the good faith defense to a post-*Janus* case. That case (*Adams v. Teamsters Local Union 429*, 2019 WL 8333531 (M.D. Pa. Dec. 5, 2019)) simply assumed that the good-faith defense applied.

Plaintiffs state that they are aware of no post-*Janus* cases in which a municipal entity was held liable for agency fees or forced payments that were diverted from wages. In *Aliser v. SEIU Cal.*, 419 F.Supp.3d 1161 (N.D. Cal. 2019), a county was held not liable by successfully asserting a *Monell* related defense. Specifically, the county's actions were compelled by state law and thus, did not represent a policy or custom of the county. Plaintiffs argue that *Aliser* does not apply because the decision to divert vacation hours was a municipal policy that was not compelled by state law. Additionally, in reply briefing, Plaintiffs argue that nothing in *Abood* indicates that an employer can take vacation hours from non-union employees. *Abood* permitted employers to take

a portion of membership fees from non-members. Here, what has been taken is vacation hours, not fees, and the same number of hours were taken from both members and non-members alike.

Finally, *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993) holds that a federal rule that is announced and applied to the parties is retroactive. Application of the *Harper* rule leads to the conclusion that *Janus* should apply retroactively to this case. Additionally, in reply, Plaintiffs argue that the question of retroactivity is governed by *Harper*, not *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1991).

*Defendant's Position*

The County argues that *Adams* applied the good faith defense to a municipal entity. Further, the Ninth Circuit has extended the good faith defense to private entities. While *Owen* held that governmental entities are not entitled to qualified immunity, there is a significant difference between the good faith defense and qualified immunity. In litigation against private entities, courts have recognized that it is unfair for a private entity who relied on a presumptively constitutional statute to be held liable while the state may invoke sovereign immunity and its officials may invoke qualified immunity. The same principles would apply here where the FDSA is entitled to a good faith defense, yet the County is not; the County simply acted in a ministerial capacity by transferring the hours in compliance with law. The County received no benefit from the transfer of hours. Instead, the FDSA used those hours to conduct business on behalf of members and non-members.

The County also argues that it is unaware of any post-*Janus* cases that have held a municipal entity liable for collecting fees or payments in accordance with *Abood*. In *Aliser*, the Northern District found that mere compliance with mandatory state laws does not cause a constitutional violation, and that the general decision to contract with unions using an agency shop arrangement did not cause any constitutional violations. Here, California law (Cal. Gov. Code § 3502.5) authorized public employee union members to call for a vote on whether to impose an agency shop, and when the vote approves an agency shop, the public employer is under a mandatory duty to collect agency fees from its employees. Therefore, the County exercised no discretion in taking the vacation hours.

Finally, the County argues that courts have recognized that the language actually used in *Janus* suggests that retroactive application is not appropriate. All courts seem to assume that *Janus* applies retroactively and then deny relief primarily through application of the good faith defense. In deciding whether *Janus* applies retroactively, the Ninth Circuit dictates that the Court should apply *Huson*. Application of the three *Huson* factors (whether the decision establishes a new principle of law, whether retrospective operation will further or retard the rule's operation in light of the rule's history, purpose, and effect, and whether the decision could produce substantial inequitable results if applied retroactively) indicates that retroactive application should not occur. Moreover, as indicated above, the County received no benefit from collecting the vacation hours and the FDSA used those hours for the benefit of Her and Chandavong.

*Discussion*

1. Issues from Additional Briefing

    a. Good Faith Defense

Private parties are generally not entitled to qualified immunity.[1] See Wyatt v. Cole, 504 U.S. 158, 167-69 (1992); Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002). However, private individuals and private entities may invoke a good faith affirmative defense to § 1983 liability. Danielson v. Inslee, 945 F.3d 1096, 1097 (9th Cir. 2019); Clement v. City of Glendale, 518 F.3d 1090, 1096-97 (9th Cir. 2008). The good faith affirmative defense can apply to actions taken in direct reliance on presumptively valid state laws and then-binding Supreme Court precedent. See Danielson, 945 F.3d at 1097; Clement, 518 f.3d at 1096-97.

Like private parties, municipal entities may not assert the defense of qualified immunity. Owen v. City of Independence, 445 U.S. 622, 638 (1980); Hernandez v. City of San Jose, 897 F.3d 1125, 1139 (9th Cir. 2018). Unlike private parties, courts that have addressed a municipality's assertion of the good faith affirmative defense have generally rejected the defense based on *Owen* or cases that have followed *Owen*. E.g. Saye v. St. Vrain Valley Sch. Dist., 650 F.Supp. 716, 722 (D. Col. 1986).

---

[1] A private party who is hired by a governmental entity to perform public services may assert the qualified immunity affirmative defense. See Filarsky v. Delia, 566 U.S. 377, 387-90 (2012).

4

*Owen* did not deal with the good faith affirmative defense as enunciated by the Ninth Circuit in *Danielson* and *Clement*. Instead, *Owen* dealt with whether a municipal entity may assert qualified immunity. Owen, 445 U.S. at 624-25. However, while qualified immunity and the good faith affirmative defense are not identical, *Owen*'s language and rationale are illuminating, if not dispositive. *Owen* explained that *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978) resolved the question of "whether local governments, although not entitled to an absolute immunity, should be afforded some form of official immunity in § 1983 suits." Id. at 624. The Eighth Circuit had extended qualified immunity to a city because the city officials had "acted in good faith and without malice." Id. at 625. In reversing the Eighth Circuit, *Owen* noted: a long legal history of municipal entities being held liable for tortious conduct without any mention of an entitlement to immunity, the purpose of § 1983 was to provide compensation for past abuses and to deter future unconstitutional behavior, the likelihood that many victims of municipal malfeasance would be left with no remedy if the municipality could assert "a good faith defense," and that the two rationales that support official immunity were unpersuasive when applied to municipalities. Id. at 639-55. In summarizing its holding, *Owen* explained:

> In sum, our decision holding that municipalities have *no immunity* from damages liability flowing from their constitutional violations harmonizes well with developments in the common law and our own pronouncements on official immunities under § 1983. Doctrines of tort law have changed significantly over the past century, and our notions of governmental responsibility should properly reflect that evolution. No longer is individual "blameworthiness" the acid test of liability; the principle of equitable loss-spreading has joined fault as a factor in distributing the costs of official misconduct.
>
> We believe that today's decision, together with prior precedents in this area, properly allocates these costs among the three principals in the scenario of the § 1983 cause of action: the victim of the constitutional deprivation; the officer whose conduct caused the injury; and the public, as represented by the municipal entity. The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole. And the public will be forced to bear only the costs of injury inflicted by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." [Monell, 436 U.S. at 694].

Id. at 657-58 (emphasis added). The Fifth Circuit characterized *Owen* as holding that

5

"municipalities have no immunity in § 1983 actions, and that good faith does not serve as a defense to liability." Wheeler v. Pleasant Grove, 664 F.2d 99, 101 (5th Cir. 1981).

In *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993), the Supreme Court addressed pleading standards. In relevant part, *Leatherman* discussed the holdings of *Monell* and *Owen*. *Leatherman* explained that *Monell* and *Owen* "make it quite clear that, unlike various government officials, municipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983. In short, a municipality can be sued under § 1983, but it cannot be held liable unless a municipal policy or custom caused the constitutional injury." Id.

In a case that is similar to the contentions made by the County, the Ninth Circuit cited *Owen* to deny an attempted good faith/immunity defense. In *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 1984), an Idaho County argued that "it should be immune because it was merely acting according to state law, rather than carrying out County policy." The Ninth Circuit found the argument to be without merit. "This argument, however, goes only to the question of the Commissioners' good faith in applying the statute. The fact that the Commissioners are immune from suit under § 1983 because of their good faith does not relieve the County from liability." Id.

Together, *Owen*, *Leatherman*, and *Evers* can be read as standing for the proposition that, in order to redress constitutional wrongs, a municipality will be held liable for constitutional injuries caused by its practice, policy, or custom, irrespective of its officers' ability to assert qualified immunity and irrespective of any good faith reliance on state statutes. This proposition would seem to undercut application of a good faith affirmative defense to a municipality. Recognizing the good faith defense for a municipality could negate *Owen*'s balancing and goal of ensuring the availability of compensation for injuries caused by municipal policies and practices. To the Court's knowledge, and as confirmed by the parties' briefing, no court in a reasoned decision has extended the good faith affirmative defense to municipalities. In light of *Owen*, *Leatherman*, and *Evers*, until the Supreme Court or the Ninth Circuit holds otherwise, this Court cannot hold that the County is entitled to assert the good faith affirmative defense.

b.      Retroactive Application of *Janus*

"When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993); see also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995); Hajro v. United States Citizenship & Immigration Servs., 811 F.3d 1086, 1099 (9th Cir. 2016). When the Supreme Court "does not 'reserve the question whether its holding should be applied to the parties before it,' however, an opinion that announces a rule of federal law 'is properly understood to have followed the normal rule of retroactive application' and must be 'read to hold . . . that its rule should apply retroactively to the litigants then before the Court.'" Harper, 509 U.S. at 97-98 (quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 539 (1991) (Souter, J)). Thus, "[s]ilence on the issue [of retroactivity] indicates that the decision is to be given retroactive effect." Hajro, 811 F.3d at 1099. When the Supreme Court announces a retroactive rule of federal law, the rule must be applied retroactively by all courts. See Reynoldsville Casket, 514 U.S. at 752; Hajro, 811 F.3d at 1099.

The question is whether the above principles apply to *Janus* such that its First Amendment holding applies retroactively. *Janus* overruled *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977). Janus, 138 S.Ct. at 2486. As explained by the Ninth Circuit, *Abood* had "held that unions could collect compulsory agency fees from nonmembers to finance their collective bargaining activities, without running afoul of the First and Fourteenth Amendments." Danielson, 945 F.3d at 1097. After the Supreme Court determined that *Abood* was wrongly decided and that *stare decisis* did not sufficiently support affirming *Abood*'s continued vitality, the Supreme Court concluded:

> For these reasons, States and public-sector unions may no longer extract agency fees from nonconsenting employees. Under Illinois law, if a public-sector collective-bargaining agreement includes an agency-fee provision and the union certifies to the employer the amount of the fee, that amount is automatically deducted from the nonmember's wages. §315/6(e). No form of employee consent is required.
>
> This procedure violates the First Amendment and cannot continue. Neither an agency fee nor any other payment to the union may be deducted from a

> nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Johnson v. Zerbst, 304 U. S. 458, 464 (1938); see also Knox, 567 U. S. at 312-313. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Curtis Publishing Co. v. Butts, 388 U. S. 130 (1967) (plurality opinion); see also College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U. S. 666, 680-682 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.
>
> \*\*\*
>
> *Abood* was wrongly decided and is now overruled. The judgment of the United States Court of Appeals for the Seventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

Janus, 138 S.Ct. at 2486 (emphasis added). This holding, as well as a nutshell summary of the entire opinion, was also given in the first two paragraphs of *Janus*:

> Under Illinois law, public employees are forced to subsidize a union, even if they choose not to join and strongly object to the positions the union takes in collective bargaining and related activities. We conclude that this arrangement violates the free speech rights of nonmembers by compelling them to subsidize private speech on matters of substantial public concern.
>
> We upheld a similar law in [*Abood*], and we recognize the importance of following precedent unless there are strong reasons for not doing so. But there are very strong reasons in this case. Fundamental free speech rights are at stake. *Abood* was poorly reasoned. It has led to practical problems and abuse. It is inconsistent with other First Amendment cases and has been undermined by more recent decisions. Developments since *Abood* was handed down have shed new light on the issue of agency fees, and no reliance interests on the part of public-sector unions are sufficient to justify the perpetuation of the free speech violations that *Abood* has countenanced for the past 41 years. *Abood* is therefore overruled.

Id. at 2459-60 (emphasis added).

From these passages, the Court concludes that application of *Harper* leads to the conclusion that *Janus* applies retroactively.

First, the Supreme Court recognized the rule that the First Amendment is violated when non-union public employees are forced to subsidize a union without having affirmatively and freely given their consent for the subsidy. See Janus, 138 S.Ct. at 2459-60, 2486. The Supreme Court analyzed § 315/6(a) of the Illinois Public Labor Relations Act under this constitutional rule. Because § 315/6(a) forced all public employees to subsidize a union, irrespective of consent or actual membership in the union, § 315/6(a) violated the First Amendment. See id. In other words, the Supreme Court applied the First Amendment constitutional rule to the parties in the case and

1  found that § 315/6(a) was unconstitutional.  Under *Harper*, this application of a constitutional rule,
2  which led to the invalidation of § 315/6(a), means that *Janus* applies retroactively.  See
3  Reynoldsville Casket, 514 U.S. at 752; Harper, 509 U.S. at 97-98.
4    Second, *Janus* did not reserve the question of whether its holding should be applied to the
5  parties before it.  *Janus* overruled *Abood*, invalidated § 315/6(a) based on the newly announced
6  constitutional rule, and then remanded for further proceedings.  See Janus, 138 S.Ct. at 2486.
7  Nowhere in *Janus* is there any discussion about retroactivity or application of the new rule being
8  reserved.  Indeed, the terms "prospective" and "retroactive" are not found in the opinion.  The
9  absence of a reservation, either in terms of retroactivity or application of the new rule, shows that
10 *Janus* is to be given retroactive effect.  Harper, 509 U.S. at 97-98; Hajro, 811 F.3d at 1099.
11   It is true that some courts have found that the issue of retroactivity "poses some knotty
12 problems."  Janus v. American Fed'n of State, 942 F.3d 352, 360 (7th Cir. 2019).  These courts
13 often point to language within *Janus* that arguably suggests purely prospective application, but
14 these courts generally assume retroactivity without actually deciding the issue.  E.g. Akers v.
15 Maryland State Educ. Ass'n, 990 F.3d 375, 379 (4th Cir. 2021); Wholean v. CSEA SEIU Loc.
16 2001, 955 F.3d 332, 336 (2d Cir. 2020); Lee v. Ohio Educ. Ass'n, 951 F.3d 386, 389 (6th Cir.
17 2020); Janus, 942 F.3d at 358-60.  For example, *Janus* stated that public sector unions received a
18 "considerable windfall" through their collection of representation fees during *Abood*, the
19 "unconstitutional extractions cannot be allowed to continue indefinitely," and that the unions "may
20 no longer extract" representation fees from non-consenting non-union members.  Lee, 951 F.3d at
21 389 (quoting Janus, 138 U.S. at 2485-86; see also Akers, 990 F.3d at 379 (same).  The Second
22 Circuit has gone so far as to "note" that "nothing in *Janus* suggests that the Supreme Court
23 intended its ruling to be retroactive.  Indeed, the *Janus* Court held that 'States and public-sector
24 unions *may no longer* extract agency fees from nonconsenting employees,' Janus, 138 S.Ct. at
25 2486 (emphasis added), and the Supreme Court reversed and remanded for further proceedings
26 rather than apply its new rule to the parties before it."  Wholean, 955 F.3d at 336.  Based on the
27 status of this case, the Court cannot assume that *Janus* is to be applied retroactively.  While the
28 Court appreciates these courts' skepticism, the Court still concludes that *Janus* is retroactive.

1        First, the Court respectfully disagrees with *Wholean* that *Janus* did not apply its
2 constitutional rule to the parties before it.  As stated above, the new constitutional rule is that,
3 under the First Amendment, public employees who are not union members and who do not
4 consent to subsidizing a union cannot be forced to do so.  See *Janus*, 138 S.Ct. at 2459-60, 2486.
5 Instead of simply announcing that rule and letting the Seventh Circuit determine how the new rule
6 applies to any of the issues raised by the parties, the Supreme Court overruled *Abood* and held that
7 § 315/6(a) violated the First Amendment rule.  The case was remanded with the understanding
8 that the plaintiffs had been subjected to an unconstitutional practice and statute.  As result, the
9 Seventh Circuit analyzed affirmative defense issues (good faith defense and statute of limitations),
10 whether the union was a "person" who "acted under color of state law" (§ 1983 elements), and
11 applied the good faith defense to defeat Mr. Janus's claimed remedy; it did not evaluate the
12 constitutionality of § 315/6(a) or whether Mr. Janus had suffered a constitutional injury.  See
13 *Janus*, 942 F.3d at 354, 360-67.  It is unclear how the invalidation of § 315/6(a) is anything other
14 than application of the new First Amendment rule to the issues and parties of *Janus*.  Therefore,
15 the Court concludes that *Janus* applied its new First Amendment rule to the parties before it.

16        Second, it seems to the Court that focusing on potentially forward looking statements to
17 determine "prospectivity"/retroactivity is contrary to *Harper*.  *Harper* set bright line rules:  (1)
18 application of a new rule to the parties requires all courts to apply the rule retroactively; (2) silence
19 on the issue of whether a rule applies retroactively means that the rule applies retroactively; and
20 (3) the Supreme Court's reservation of the issue of retroactivity/whether to apply the rule to the
21 parties before it means that courts are not required to automatically apply the rule retroactively.
22 See *Harper*, 509 U.S. at 97-99; see also *Hajro*, 811 F.3d at 1099; *Shah v. PAN AM Servs.*, 148
23 F.3d 84, 91 (2d Cir. 1998) (holding in part that *Harper* does not require retroactive application
24 where the Supreme Court *explicitly* 'reserves the question whether its holding should be applied to
25 the parties before it.'" (quoting *Harper*, 509 U.S. at 97) (emphasis added)).[2]  In other words, the

---

27 [2] The Court notes that in a withdrawn opinion (that was nonetheless cited without reservation in *Hajro*, 811 F.3d at 1099), consistent with *Shah*, the Ninth Circuit viewed *Harper* as admonishing that "if a decision is not to be given
28 retroactive effect, its prospective-only application should be announced in the opinion itself."  *Gonzales v. United States DHS*, 659 F.3d 930, 938 (9th Cir. 2011), *withdrawn and substitute opinion at* 712 F.3d 1271 (9th Cir. 2013).

1  Supreme Court has indicated that Courts should look for a reservation of the issue in an opinion,
2  one that is express or clear.  See Shah, 148 F.3d at 91; see also Gonzales, 659 F.3d at 938;
3  Tagaeva v. BNV Home Care Agency, Inc., 2018 U.S. Dist. LEXIS 42081, *8 (E.D. N.Y. Mar. 13,
4  2018) (characterizing *Harper* as requiring an "express reservation" in order for the general rule of
5  retroactivity not to apply); Digital Equip Corp. v. Department of Revenue, 916 P. 933, 937 (Wash.
6  1996) (same); Dart Indus. v. Clark, 657 A.2d 1062, 1066 (R.I. 1995) (same).  Looking to
7  potentially forward looking and ambiguous statements that could have several implications and
8  connotations is an approach that could easily lead to inconsistent results and would not lead to
9  universal retroactive applications of new federal rules.  Such a result would be contrary to *Harper*.
10         Third, and relatedly, *Harper*'s "reservation" language comes directly from Justice Souter's
11 opinion in *Beam*, specifically page 539.  See Harper, 509 U.S. at 97-98 (citing Beam, 501 U.S. at
12 539).  *Beam* at page 539 explained that because *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263
13 (1984) "did not reserve the question whether its holding should be applied to the parties before it,"
14 *Bacchus* was to be read as mandating retroactive application.  See Beam, 501 U.S. at 539.  *Beam*
15 contrasted *Bacchus* with *American Trucking Assns, Inc. v. Scheiner*, 483 U.S. 266 (1987).  *Beam*
16 gave the following parenthetical description of *Scheiner*:  "remanding case to consider whether
17 ruling 'should be applied retroactively and to decide other remedial issues.'"[3]  Beam, 501 U.S. at
18 539.  There is no similar language to *Scheiner* that can be found in *Janus*.[4]  Again, *Janus* never
19 states that retroactivity or application of the new First Amendment rule is being reserved, nor does
20 *Janus* even use the terms "prospective" or "retroactive" anywhere in its opinion.  While there are
21 forward looking statements in *Janus*, those statements do not clearly or expressly purport to be
22 addressing retroactivity, nor do the statements appear within the context of a discussion of

---

[3] The Court notes that the retroactive application of a new rule does not "determine what 'appropriate remedy' (if any) [a party] should obtain."  Davis v. United States, 564 U.S. 229, 243 (2011); see Danielsen, 945 F.3d at 1099 ("The Supreme Court has made clear that right and remedy must not be conflated, and that retroactivity of a right does not guarantee a retroactive remedy."); see also Janus, 942 F.3d at 361+62.

[4] The Court notes that in *Shah*, the Second Circuit held that the Supreme Court reserved the question of retroactivity in *Lexecon, Inc. v. Millberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Specifically, *Shah* explained that *Lexecon* reversed and remanded a lower court opinion but also noted a party's "prospectivity" argument, but held that it was "unnecessary for [the Court] to consider [that argument]" because it was not presented below and in the opposition to certiorari.  See Shah, 148 F.3d at 91 (citing Lexecon, 523 U.S. at 42-43 & n.5).  Again, there is no language in *Janus* that is similar to *Lexecon*.

1 retroactivity. It seems more plausible that, instead of intending to hold that *Janus* applies
2 prospectively, the *Janus* majority was addressing a dissent that repeatedly emphasized the 41 year
3 validity of *Abood*, or answering particular arguments by the litigants, or merely emphasizing that
4 an older and previously valid practice was too offensive to the First Amendment to be upheld
5 solely on the basis of *stare decisis* or longevity. The forward looking statements in *Janus* (as
6 identified in cases like *Akers*) are insufficient similar to *Scheiner* for the Court to conclude that
7 they represent a reservation of the retroactivity issue or that the Supreme Court intended *Janus* to
8 be applied prospectively. See Shah, 148 F.3d at 91; see also Gonzales, 659 F.3d at 938; Tagaeva,
9 2018 U.S. Dist. LEXIS 42081 at *8; Digital Equip Corp., 916 P. at 937; Dart Indus., 657 A.2d at
10 1066. Therefore, the failure of *Janus* to reserve the retroactivity question means that *Janus* is to
11 be applied retroactively. See Harper, 509 U.S. at 97-98; Hajro, 811 F.3d at 1099.

12 Fourth, the fact that the Supreme Court ended *Janus* with a remand to the Seventh Circuit
13 "for further proceedings consistent with this order" is not dispositive. Simply establishing that a
14 constitutional violation has occurred and invalidating a statute does not answer issues with respect
15 to remedies, other elements of 42 U.S.C. § 1983, or affirmative defenses. As noted above, the
16 Seventh Circuit on remand addressed those other issues and ultimately held that the good faith
17 affirmative defense applied to the union, which defeated Mr. Janus's requested damages. See
18 Janus, 942 F.3d at 354, 360-67. Moreover, in *Bacchus*, a cased that *Beam* clarified was to be read
19 as retroactive because there was no reservation of the issue in that opinion, see Beam, 501 U.S. at
20 539, the Supreme Court reversed the Supreme Court of Hawaii and "remand[ed] for further
21 proceedings not inconsistent with this opinion." Bacchus, 468 U.S. at 277. Similarly, in *United
22 States v. James Daniel Good Real Prop.*, 510 U.S. 43, 65 (1993), the Supreme Court held that the
23 United States had filed its lawsuit within the applicable limitations period. *Good* then ended by
24 remanding the matter "for further proceedings consistent with this opinion." Id. The Ninth
25 Circuit subsequently applied *Harper* to *Good* and held that *Good* was to be applied retroactively.
26 See United States v. 20832 Big Rock Dr., 51 F.3d 1402, 14005-06 (9th Cir. 1995); see also United
27 States v. One Parcel of Real Property, Located at 9638 Chicago Heights, 27 F.3d 327, 329 (8th
28 Cir. 1994) (holding that *Good* was to be applied retroactively).

In sum, after applying *Harper*, the Court concludes that *Janus* is to be applied retroactively.[5]

### c. Municipal Liability Post-*Janus*

The parties have been unable to find any cases post-*Janus* in which a municipality like the County has been held liable for pre-*Janus* conduct. However, the parties have found and discussed *Aliser v. SEIU Cal.*, 419 F.Supp.3d 1161, 1165 (N.D. Cal. 2019).

In *Aliser*, a number of plaintiffs brought claims against three California counties under § 1983 for continuing to deduct union dues after the plaintiffs communicated their desire to resign their union membership. *Aliser*, 419 F.Supp.3d at 1164-65. The Counties all relied on Cal. Gov't Code § 1157.12(b) to deduct dues. See id. Section 1157.12(b) "requires public employers to direct all employee requests for changes in dues deductions to the unions, and to rely on the unions for information regarding which employees should have dues deducted from their paychecks." *Aliser*, 419 F.Supp.3d at 1165 (quoting Cal. Gov. Code § 1157.12(b)). *Aliser* rejected the plaintiffs' claims against the counties since no plausible *Monell* claim had been stated:

> Regardless of whether it violates the Constitution for public employers to rely on unions for information regarding dues deductions, the plaintiffs have not adequately alleged that the three county defendants (Riverside, Monterey, and Alameda) are liable for this conduct under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). For municipal liability to attach under *Monell*, the constitutional violation must be caused by an official policy of the municipality. Sandoval v. County of Sonoma, 912 F.3d 509, 517 (9th Cir. 2018). Here, however, the plaintiffs have not plausibly alleged any county policy of relying on unions for dues deduction information — rather, it appears that the counties were simply complying with state law. See California Government Code § 1157.12. The state statute uses mandatory language, and the plaintiffs have not suggested that the counties had discretion under state law to act contrary to the statute's instructions. See id. ("Public employers . . . shall . . . [d]irect employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed . . . ." (emphasis added)). When a municipality exercises no discretion and merely complies with a mandatory state law, the constitutional violation was not caused by an official policy of the municipality. See Vives v. City of New York, 524 F.3d 346, 353 (2d Cir. 2008); see also Evers v. County of Custer, 745 F.2d 1196, 1203

---

[5] The County cites *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011) to argue that *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) remains good law and that the *Chevron Oil* factors show that *Janus* should be applied prospectively. However, as discussed above, *Harper* controls whether *Janus* is to be applied retroactively. The cited passage from *Nunez-Reyes* was a passage in which the Ninth Circuit was deciding whether to announce a new federal rule that it had decided, not a new rule that the Supreme Court had decided. See Nunez-Reyes, 646 F.3d at 690.

13

> (9th Cir. 1984); Sandoval, 912 F.3d at 518 (citing *Evers*). This requirement bars the plaintiffs' claims against the counties for both prospective and retrospective relief. See Los Angeles County v. Humphries, 562 U.S. 29, 37, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010).
>
> The plaintiffs argue that *Monell* liability can be based on the counties' policies of "establish[ing] and enforc[ing] an agency shop," Dkt. 124 at 4. But that is wrong. The general decision to contract with unions using an agency shop arrangement did not "cause" the specific allegedly unconstitutional conduct that forms the basis of this claim.

Id. at 1165.

At this time, the Court cannot follow *Aliser*.

First, the County invokes Cal. Gov. Code § 3502.5, not Cal. Gov. Code § 1157.12(b) which was at issue in *Aliser*. Under § 3502.5, an "agency shop" may be created in one of two ways, either by negotiation between the public employer and a recognized public employee organization, or by a petition signed by 30% of the bargaining unit members combined with majority approval in a secret ballot election. See Cal. Gov. Code §§ 3502.5(a), (b); Orange Cnty. Water Dist. v. Public Employment Relations Bd., 8 Cal.App.5th 52, 61-62 (2017). An "agency shop" for purposes of § 3502.5 means "an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization." Cal. Gov. Code § 3502.5(a); County of L.A. v. Los Angeles Cnty Employee Relations Com., 56 Cal.4th 905, 912 (2013). The County does not specify which provision of § 3502.5 actually applies with respect to the FDSA or the applicable MOU. If the "agency shop" in this case was created as result of the procedures of § 3502.5(a), i.e. negotiation between the Union and the County, then it is arguable that the County made a voluntary policy decision and was not acting under any mandatory state law duty. If the "agency shop" was created through § 3502.5(b), i.e. through petition and election, then it is arguable that the County was simply following mandatory duties under state law and not making a voluntary policy decision when it collected fees and vacation hours. The County's briefing suggests this is the method/subsection at issue. However, the parties' briefing on the significance of § 3502.5 is short and not particularly developed. For example, there is no discussion about whether the collection of vacation hours by the County was done purely through § 3502.5, or whether it was

14

the result of an otherwise voluntary agreement between the FDSA and the County. In other words, there is an insufficient explanation of how the vacation hours that were collected from non-members Chandavong and Her fit within § 3502.5 and any agreements between the County and the FDSA. Moreover, the FAC does not mention § 3502.5. Accepting evidence regarding the nature of the "agency shop" at issue or the history of the agreement to collect vacation hours would entail acceptance of extrinsic evidence. The additional briefing received for this order was requested by the Court in connection with a Rule 12(b)(6) motion to dismiss.[6] Consideration of extrinsic evidence would be inconstant with Rule 12(b)(6). See Fed. R. Civ. P. 12(d). Therefore, there is insufficient argument and evidence regarding § 3502.5's application to this case, and, given the procedural posture of case, additional necessary information to support the County's arguments cannot be received at this time.

Second, the law is unsettled in the Ninth Circuit with respect to a municipality's liability under § 1983 when the municipality is following or acting in accordance with state law. Some courts find that there is no liability when the municipality follows a non-discretionary mandatory state law because the municipality did not make a policy decision. E.g. Quezambra v. United Domestic Workers of Am., 445 F.Supp.3d 695, 706 (C.D. Cal. 2020); Aliser, 419 F.Supp.3d at 1165; Mitchell v. Atkins, 387 F.Supp.3d 1193, 1201-02 (W.D. Wash. 2019). Some courts find or suggest that following state law, even if a non-discretionary, mandatory, state law duty is involved, does not relieve a municipality of liability. E.g. Denning v. Lincoln Cnty. Sheriff's Office, 2020 U.S. Dist. LEXIS 12288, *33-*34 (D. Ida. Jan. 21, 2020); Brewster v. City of L.A., 2019 U.S. Dist. LEXIS 225770, *21 n.6 (C.D. Cal. July 29, 2019); Conroy v. City of Philadelphia, 421 F.Supp.2d 879, 886-87 (E.D. Pa. 2006). Other courts have noted that the issue has not been definitively settled. See Bruce & Tanya & Assocs. v. Board of Supervisors, 355 F.Supp.3d 386, 400 n.6 (E.D. Va. 2018). Within the Ninth Circuit, at least, part of the disagreement involves how to interpret *Evers*. Given the divide, the Court will not decide the issue without more in depth briefing from the parties.

---

[6] The FDSA challenged the SAC through a combined Rule 12(b)(1) and Rule 12(b)(6) motion. However, mootness was the only issue addressed by the Court through the prism of Rule 12(b)(1). The County's liability (if any) is properly addressed at this stage through a Rule 12(b)(6) motion.

Third, *Aliser* appears to have involved only the collection of ordinary membership dues. In this case, Chandavong and Her emphasize that they are complaining about vacation hours that were involuntarily taken from them. Further, they contend that no state law compelled the transfer of vacation hours from them to the FDSA, and that *Abood* authorized only the collection of a portion of fees and not the collection of the same amount of fees or vacation hours from union members and non-members alike. The parties do not spend a great deal of time briefing these specific issues. However, the Court finds that the questions raised by Chandavong and Her are significant. For example, the nature of the vacation hours earned by Chandavong and Her, and whether the transfer of vacation hours can reasonably be classified as part of a service fee or special assessment, would be relevant to not only determining whether a constitutional violation occurred, but also whether their collection may have been part of a mandatory duty imposed on the County through the establishment of an "agency shop" under § 3502.5.[7] It may be that vacation hours are equivalent to or a part of a service fee or membership dues.[8] But until further proceedings occur, the Court cannot hold that the fact that Chandavong and Her are challenging the taking of vacation hours is immaterial.

In sum, this appears to be a unique case. The ultimate resolution of the County's liability (if any) will have to await further proceedings.

          d.      Conclusion

In light of the arguments made in connection with the FDSA's motion to dismiss the SAC and the supplemental briefing received, the Court will not dismiss the third cause of action against the County for vacation hours involuntarily taken from Chandavong and Her pre-*Janus* when they were not members of the FDSA.

      2.      The FDSA

In the order on the FDSA's motion to dismiss the SAC, the Court dismissed without leave

---

[7] The Court at this time is not resolving the question of whether the County was under a mandatory duty, or what the effect of a non-discretionary mandatory duty on the County would be for purposes of § 1983. The Court is only noting the potential issues surrounding the proper classification of the vacation hours taken.

[8] The Court notes that the third cause of action does not allege that any part of the vacation hours were collected properly or that only a portion of the vacation hours were collected unconstitutionally. The Court reads the SAC as alleging that all vacation hours were collected unconstitutionally in light of *Janus*.

16

to amend Her and Chandavong's third cause of action for vacation hours taken pre-*Janus*. Upon further consideration, the Court finds that the claims should be dismissed with leave to amend. At the time of dismissal, Chandavong and Her had not been appraised of any pleading flaws for that claim. Generally, the first time a claim is dismissed for a particular deficiency, leave to amend is granted unless it is clear that amendment would be futile. See Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016). The supplemental briefing received leads the Court to conclude that amendment would not necessarily be futile. Therefore, the Court will grant Chandavong and Her leave to amend their third cause of action against the FDSA for pre-*Janus* vacation hours that were involuntarily taken when Chandavong and Her were not members of the FDSA.

   3.  Severance

   In relevant part, Rule 21 provides that a court may *sua sponte* "at any time, on just terms, add or drop a party. The court may also sever any claim against any party." Fed. R. Civ. P. 21; Bain v. California Teachers Ass'n, 891 F.3d 1206, 1215 (9th Cir. 2018). "[A] finding of misjoinder is not a prerequisite to severing parties or claims under Rule 21." Acevedo-Garcia v. Monroig, 351 F.3d 547, 560 n.5 (1st Cir. 2003); Wyndham Assoc. v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968). Courts have broad discretion in determining whether to sever claims or parties. See In re EMC Corp., 677 F.3d 1351, 1355 (Fed. Cir. 2012); Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000). A severance may be justified by various considerations, including avoiding undue delay or prejudice to the parties, see Applewhite v. Reichhold Chems., Inc., 67 F.3d 571, 574 (5th Cir. 1995), whether there are significantly different factual situations or legal questions, Langley v. Guiding Hands Sch., Inc., 2021 U.S. Dist. LEXIS 63302, *37 (E.D. Cal. Mar. 30, 2021), whether the claims are otherwise logically distinct, see Aiello v. Kingston, 947 F.2d 834, 835 (7th Cir. 1991), or whether severance will serve the ends of justice and further the prompt and efficient disposition of litigation. Crown Cork & Seal Co. v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 332 (S.D. N.Y. 2013); Tab Express Int'l, Inc. v. Aviation Simulation Tech., Inc., 215 F.R.D. 621, 623 (D. Kan. 2003). A severance under Rule 21 results in the creation of a new, distinct, separate case. Demartini v. Demartini, 964 F.3d 813, 821 (9th Cir .2020); Herklotz v. Parkinson, 848 F.3d 894, 898 (9th Cir. 2017). To proceed in federal court, the

newly created severed action must have its own independent basis for federal jurisdiction; the severed action cannot rely solely on supplemental jurisdiction. Herklotz, 848 F.3d at 898; see also Demartini, 964 F.3d at 821.

Here, the remaining claims can be divided into two groups. The first group consists of state law claims based on the attempted resignation from the FDSA by FDSA members Campos, Chandavong, Vang, and Yang – this is the second cause of action. The second group consists of federal and possibly state law claims based on involuntarily taken vacation hours from FDSA non-members Her and Chandavong – this is the third cause of action.[9] These two groups of claims are distinct. They involve different injuries, different wrongful acts by Defendants, and are based on different theories of recovery. Moreover, the only federal issues remaining in this case involve only non-FDSA members. The Court detects no prejudice to any party if these two claim groups, and more specifically the claims between FDSA member Plaintiffs and FDSA non-member Plaintiffs, are severed. In fact, severing the claims of the FDSA non-member Plaintiffs will enable the Court to exercise its discretion under 28 U.S.C. § 1367(c)(3) and complete the substantive aspects of the litigation as to the FDSA member Plaintiffs in this Court.[10] Also, the FDSA member Plaintiffs will be able to pursue their state law claims in state court, a preferable forum considering the claims and policy arguments made and implicated by the second cause of action.

Given these considerations, the Court finds it appropriate to utilize Rule 21 to sever claims. The claims of Chandavong (as a non-member of FDSA) and Her found in the third cause of action based on the involuntary taking of vacation hours against the County and the FDSA will be severed from all other claims.

---

[9] Chandavong was initially an FDSA member, but successfully resigned in December 2016. See SAC ¶ 24. Therefore, from December 2016 forward, Chandavong was not an FDSA member. In the Court's December 17, 2020 order dismissing the first cause of action and part of the third cause of action against the County, the Court stated in a footnote that Chandavong's claims for vacation hours ran from December 2016 to July 2018. See Doc. No. 79 at 3 n.1. The Footnote indicated that this was connected to the good faith defense. See id. To clarify, Chandavong's claim runs from December 2016 because this was the date Chandavong was no longer a member of the FDSA. See Janus, 138 S.Ct. at 2486; Doc. No. 74 at 12:15-23.

[10] The Court recognizes that there may be issues or motions relating to attorneys' fees that may remain. Further, the FDSA member Plaintiffs will be able to appeal any of the Court's decisions to the Ninth Circuit if they desire.

As part of the severance process, Chandavong and Her will be required to file a new complaint, which will be styled as the Third Amended Complaint ("TAC").  The TAC will eliminate all allegations from the SAC that are not relevant to pursuing a claim found in the SAC's third cause of action.  As discussed above, although the Court previously dismissed the FDSA without leave to amend, the TAC may (but is not required to) include additional allegations against the FDSA in order to pursue claims based on the involuntary taking of vacation hours. Also, it is not entirely clear whether the third cause of action contains state and federal claims. The § 1983 cause of action must be pled separately as its own distinct cause of action in the TAC. To the extent Chandavong and Her are attempting to allege pendent state law claims based on the involuntary taking of vacation hours, each state law claim must be alleged expressly and as a separate and distinct cause of action; Plaintiffs will not be permitted to lump all state law claims together under a single cause of action.  Finally, if Plaintiffs intend to use an incorporation by reference pleading technique, then they shall refrain from incorporating all prior allegations under a cause of action when all prior allegations are not relevant or appropriately incorporated by reference.  Incorporating by reference all prior allegations irrespective of relevance is an improper pleading technique; instead, specific relevant paragraphs or specific groups of paragraphs are to be incorporated by reference under each cause of action.  See Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015); Deerpoint Grp., Inc. v. Agrigenix, LLC, 345 F.Supp.3d 1207, 1234 n.14 (E.D. Cal. 2018).

4.     Supplemental Jurisdiction

By severing the claims of Chandavong and Her, two separate and distinct cases have been created.  Demartini, 964 F.3d at  821 Herklotz, 848 F.3d at 898.  Further, by severing the claims of Chandavong and Her in the third cause of action, the Court has disposed of all of the federal causes of action over which it had original subject matter jurisdiction in this case.

"A district court may decline to exercise supplemental jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  The general rule is "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d

364, 367-68 (9th Cir. 1992). Considering the early procedural posture of this case, as well as judicial economy, convenience, fairness, and comity, the Court will exercise its discretion and decline to entertain supplemental jurisdiction over the second cause of action. See 28 U.S.C. § 1367(c)(3); Religious Tech., 971 F.2d at 367-68.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. No further claims or parties will be dismissed as a result of the FDSA's second motion to dismiss or the supplemental briefing received to date;
2. The claims contained in the third cause of action as alleged by FDSA non-members Her and Chandavong against the FDSA and the County is SEVERED pursuant to Rule 21;
3. The Clerk shall ISSUE a new case number for the severed claims of Chandavong and Her with the undersigned and Magistrate Judge Grosjean assigned to the new case;
4. Within twenty-one (21) days of service of this order, Plaintiffs Her and Chandavong shall file an amended complaint as described in this order against the FDSA and the County in the newly severed case and use the newly issued case number for all further filings;
5. The Clerk shall file the following documents from this case's docket to the newly severed case's docket: Document Nos. 1, 6, 7, 8, 12, 14, 22, 24, 39, 44, 45, 48, 54, 56, 62, 65, 67, 68, 74, 75, 76, 78, 79, 81, 82, 83, 84;
6. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this case; and
7. The Clerk shall CLOSE this case.[11]

IT IS SO ORDERED.

Dated:  April 21, 2021                              _____
                                                                    SENIOR DISTRICT JUDGE

---

[11] The closure of this case does not prohibit the filing of any motions for attorney's fees in this case, as discussed in the order on the FDSA's second motion to dismiss. See Doc. No. 74 at 13:21-14:4.